## JOHN D. HOOKER

*v.*

## THE MIDLAND STEEL COMPANY et al.

*Opinion filed April 17, 1905—Rehearing denied June 13, 1905.*

1. CORPORATIONS—*officers of corporations are trustees for stockholders as a body.* Officers of a corporation occupy the position of trustees for the stockholders as a body, with respect to the business and property of the corporation, and cannot have or acquire any personal or pecuniary interest in conflict with their duties as such.

2. SAME—*director is not a trustee for individual stockholder.* A director is not a trustee for an individual stockholder with respect to his stock, over which the director has no control, and he may deal with the stockholder and purchase his stock practically on the same terms as with a stranger.

3. SAME—*when purchase of stock by director from stockholder will not be set aside.* In the absence of actual fraud a purchase of stock by a director from an individual stockholder will not be set aside for a mere failure to disclose any information the director may have had affecting the value of the stock.

4. FRAUD—*alleged false representations must have been relied upon.* To enable a party to set aside a contract upon the ground of false representations he must show that the representations alleged to be false were relied upon by him.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

MANNING, COLE & MANNING, for appellant.

GANN, PEAKS & HAFFENBERG, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On December 15, 1899, appellant, John D. Hooker, filed his bill in this case in the superior court of Cook county against the appellees, except the American Sheet Steel Company and the United States Steel Corporation, who were subsequently brought in as defendants, praying that the appellee Ross J. Beatty, or the persons whom he represented, should be required to pay appellant the difference between the amount received by appellant for stock of the Midland Steel Company and the true value thereof, or that appellant might be given the option to be re-instated as a stockholder. The material averments of the bill were, that in May, 1899, complainant, a resident of Los Angeles, California, was a stockholder in the said Midland Steel Company of Muncie, Indiana; that he owned seventy-two shares of the capital stock, of $100 each, out of a total of three thousand shares; that the defendant Beatty was president and the other individual defendants officers of the corporation, which was then in an exceedingly prosperous condition; that complainant received a letter from Beatty dated May 8, 1899, stating that a majority of the stockholders in number and amount had closed a deal for turning over the property of the corporation to representatives of New York capitalists; that complainant should mail his certificates, properly endorsed, to Beatty, or send them through a bank with a sight draft for $14,400; that complainant, to ascertain the facts, sent a representative

to the office of the company at Muncie to make investigation; that his agent discovered that no sale had been made, but was informed by Beatty that an option had been given for the sale of the business and assets of the corporation, and the agent made efforts to learn from Beatty the facts and particulars regarding the option and the data upon which the valuation of complainant's stock mentioned in the letter was reached, but Beatty refused full information, and complainant was unable to ascertain the true character of the option or said data. There was no statement in the letter of the price or particulars of the sale, but the amount offered complainant would be $200 per share; and at the same rate the whole capital stock would bring $600,000. The bill further alleged that complainant, through his agent, learned from Beatty that $600,000 was not, in fact, the price mentioned in the option, but that the real price, if a sale should occur, was to be at least $700,000 in cash or a larger amount in some other consideration; that in the investigation complainant's understanding of the facts was hindered by contradictory statements of Beatty as to the prospects of the corporation, saying sometimes that they were poor on account of the failure of natural gas, and at others that they were good on account of the location for obtaining coal; that in the investigation he learned from Beatty that the business had averaged a net profit, for six years, of thirty per cent per annum, and that there was a surplus in cash and undivided profits exceeding $200,000; that complainant served a written notice that no sale of the business or assets should be made for less than $900,000 in cash; that Beatty repeatedly declared and insisted that the majority of the stockholders were determined to sell the business and assets to a trust, and complainant, to avoid participation or interest in such an illegal combination, finally consented, under protest, to sell his shares of stock to Beatty for $18,000, the stock then being reasonably worth $32,000; that through Beatty's contradictory, conflicting and untruthful statements com-

plainant's confidence in him was shaken and he was unable to believe any statement made by Beatty as to the condition of the company, either on June 14, 1899, when he sold the stock, or at the time of filing the bill; that Beatty had offered to return complainant's stock to him at the same price paid, with interest, but that complainant was without knowledge and information in regard to the value of his stock and the existing status of the corporation, and was entitled to the assistance of a court of equity to discover the truth. The bill prayed for an answer without oath, an accounting of the condition of the corporation, and if it should appear that he was induced to part with his stock for an inadequate price he should be paid the difference between the price at which he sold it and its true value, or if the corporation was an independent one, without any outstanding option of sale to a trust, complainant might be given the option to be re-instated as a stockholder. The bill was demurred to and the demurrer was sustained with leave to amend, and thereafter a long series of amendments were filed from time to time, and amended and supplemental bills were filed.

After a reference to a master, upon which one thousand pages of testimony were taken, the complainant, on June 28, 1901, filed a petition setting forth the reference and the introduction of proof before the master, and stating that through the testimony of defendants information before unknown had been obtained that the plant and good will of the corporation had been sold to the appellee the American Sheet Steel Company, and that the said corporation had become merged in the United States Steel Corporation, and praying leave to file an amended and supplemental bill against said corporations, together with the original defendants. Leave was granted, and the amended and supplemental bill was filed July 1, 1901. On March 12, 1903, the complainant, by leave of court, made amendments to the amended and supplemental bill, stated by his counsel to be forty-nine in number, and on March 25, 1903, he filed what is called an

engrossed copy of the amended and supplemental bill as amended. A demurrer, general and special, was interposed to the amended and supplemental bill as amended and engrossed and the demurrer was sustained. The court refusing leave to make further amendments, dismissed the bill. The Branch Appellate Court for the First District affirmed the decree.

The lengthy and involved nature of the so-called engrossed copy of the amended and supplemental bill as amended precludes a statement, in detail, of its contents. An outline of the transaction has been given above in a brief statement of the averments of the original bill. The bill, as it finally appeared, recited those averments and the proceedings under the original bill, and alleged that the complainant became a stockholder in the Midland Steel Company about 1892; that in July, 1897, he delegated George S. Cole, his attorney, as representative, to attend the annual meeting at Muncie, and thereby obtained a report of the matters made known at that meeting; that he had no other information except the statements of Beatty up to May 19, 1899, when Cole again visited the plant for him; that Beatty and another officer had become interested in a project to combine steel mills into a trust, and an option was given for the purchase of the plant and property, exclusive of the cash on hand and accounts and bills receivable, for $1,000,000 preferred and $1,000,000 common stock of the trust company; that the excluded property was worth at least $75,000; that Beatty estimated to complainant the value of the trust stock which he stated would be received, at $90 per share for preferred and $60 per share for common stock, which would make the price equivalent to $1,500,000; that the letter written to him was false in four particulars; that a purchase by Beatty at $14,400 would be profitable to Beatty whether the option was carried out or not; that if the sale occurred Beatty would realize a large profit, and if not he would reap a stockholder's share of the profits of the Midland Steel Company; that in

May and June, 1899, complainant made the investigation set forth in the bill, and sought to obtain a full and satisfactory exhibit of the corporation's affairs in order to ascertain the true value of his shares of stock; that Beatty then exhibited a trial balance sheet of the corporation, and represented it to be the most accurate and complete statement, in summarized form, of the company's assets that he was possessed of or could produce; that said trial balance was incomplete because it did not show the full value of the raw and finished material on hand, and Beatty had in his possession a merchandise stock ledger containing the same; that Beatty, in answer to Cole's request, denied that he possessed any inventory, when the stock ledger showed the raw and finished material on hand; that complainant finally sold his stock to Beatty at $250 per share because of Beatty's statement that an option was outstanding and certain to be acted upon within a short time; that complainant believed the entire property to be under option of sale and that stockholders in general were to receive $200 per share in cash, but that Beatty and one other defendant had a chance to exchange part of their stock for shares in the corporation, which privilege would be extended to complainant and enable him to realize $250 per share; that, in fact, the other stockholders might receive a larger consideration in stock; that complainant suspected that the option might not be binding and might never be acted on, and at the time of the sale advised Beatty that if the sale to a trust did not occur he would reassert his right to the stock; that such right was recognized and acquiesced in by Beatty and an express offer was made by Beatty to return the stock, which was open and unrevoked when the original bill was filed; that when complainant sold his stock he only knew of the positive false statement by Beatty that there was only an option, and did not know that the consideration was different until Beatty testified in the case; that after the sale he repeatedly requested to be shown the option, but Beatty evaded and ignored his request until

November 5, 1899, when he notified complainant that the option had expired; that Beatty's conduct excited complainant's further apprehensions and induced him to file the bill; that in March or April, 1900, the business of the corporation was transferred to the American Sheet Steel Company for $1,000,000 preferred stock and $1,000,000 common stock, and the raw and finished material was sold for a large additional price; that about February 23, 1901, the stock of the American Sheet Steel Company was sold and transferred to the United States Steel Corporation for like shares of the preferred and common stock of the latter corporation. The complainant, by the bill, offered to bring into court the money received for his stock, with interest, and prayed, in the first place, for what was termed a specific performance; that inasmuch as Beatty offered to take off of complainant's hands the stock to be received in the sale of the property at $90 per share for preferred and $60 for common, he should be required to pay complainant the difference between the $18,000 already paid and the value of two hundred and forty shares of preferred stock and two hundred and forty shares of common stock at said prices, and also the share of the cash on hand, accounts and bills receivable not transferred to the trust which seventy-two shares of capital stock would entitle complainant to. The bill contained an alternative prayer that the sale of the stock should be set aside and the parties placed *in statu quo*. The alternative prayer for a rescission of the sale was for relief which Beatty had already offered to complainant without any suit, and the offer was open and unrevoked when the original bill was filed.

The bill averred that Beatty did not make a full and frank disclosure of all the facts within his knowledge affecting the value of complainant's stock or which would enable complainant to determine whether it would be best to sell the stock at the price offered or not. It is contended that Beatty, being the president and director of the Midland Steel Company, was a trustee for the complainant as a stockholder,

and was therefore in a fiduciary and confidential relation requiring him to disclose all such facts within his knowledge, and that he could not retain a benefit acquired by a breach of that duty or use knowledge in his possession to obtain a bargain from the complainant. The management of the business and property of a corporation is entrusted to its officers, and they are empowered to act for the whole body of stockholders. They therefore occupy the position of trustees for the stockholders as a body in respect to such business and property, and cannot have or acquire any personal or pecuniary interest in conflict with their duty as such trustees. A director, however, does not sustain that relation to an individual stockholder with respect to his stock, over which he has no control whatever, but he may deal with an individual stockholder and purchase his stock practically on the same terms as a stranger. In the absence of actual fraud such a purchase will not be set aside for a mere failure to disclose any information the director may have affecting the value of the stock. The rule as to a director is stated in Cook on Stock and Stockholders, (sec. 320,) as follows: "There is no confidential relation between him and a stockholder, so far as a sale of the stock between them is concerned, and so long as he remains silent and does not actively mislead the person with whom he deals the transaction cannot be set aside for fraud." Beatty did not sustain such a trust relation to the complainant, as an individual stockholder, as would prevent him, in the absence of actual fraud, from purchasing the stock. (10 Cyc. 796; *Carpenter* v. *Danforth,* 52 Barb. 581; *Walsh* v. *Gouldin,* 90 N. W. Rep. (Mich.) 406; 1 Morawetz on Private Corp. 357.) One question in the case therefore is whether there was actual fraud on the part of Beatty.

Complainant set out four particulars in which the bill alleged that the letter written by Beatty was false. The first and principal one is, that no sale had occurred but only an option had been given. That statement was corrected when

complainant's agent, Mr. Cole, went to Muncie, Indiana, and was informed that there was no sale but only an option. The second alleged false statement is, that the price stated was to be $600,000. There was, in fact, nothing said in the letter about the price, but the bill alleged that complainant ascertained before he sold his stock that the price was not $600,000 in cash, and he did not sell his stock on that basis. The third alleged false statement was, that the cash on hand and accounts and bills receivable were to be included in the sale; and the fourth, that the letter conveyed the false impression that letters substantially like the one sent to complainant had been sent to all other stockholders. These matters are only matters of inference, and as to all the supposed mis-statements it is sufficient to say that neither the letter nor the representations were ever acted upon at all. Complainant was informed through his representative that there was an option instead of a sale; that the price was different or there was some kind of an option to take stock in the trust, and instead of receiving $14,400 for his stock, as proposed by the letter, he sold it for $18,000 on account of his repugnance to any connection with the trust, believing the stock to be worth a great deal more.

One rule always adhered to is, that to enable a party to set aside a contract the representations alleged to be false must be relied upon in entering into the contract. (*Douglass* v. *Littler,* 58 Ill. 342; *Walker* v. *Carrington,* 74 id. 446; *Fauntleroy* v. *Wilcox,* 80 id. 477; *Illinois Midland Railway Co.* v. *Town of Barnett,* 85 id. 313; *Dady* v. *Condit,* 163 id. 511; *Jones* v. *Foster,* 175 id. 459.) Complainant in his bill alleged that he found out that Beatty had made mis-statements; that the statements were contradictory and that he was distrustful of him, but alleged that the distrust went only to suspecting that in a doubtful case, where Beatty's own interest could be served by misconstruction, equivocation or sophistry, he would resort thereto, but at the time of the sale he was not convinced that he would perpetrate a

deliberate, positive and malicious fraud. These averments, in connection with the other facts stated, show that the sale was not made in reliance upon representations of Beatty, and also that, in view of the knowledge complainant had, a reasonable person would not have relied upon them. Complainant made an independent investigation through his attorney, and being a stockholder he was not compelled to sell or dispose of his stock at all, (*Harding* v. *American Glucose Co.* 182 Ill. 551,) and he was not entitled to rely upon representations as to the law. (*Fish* v. *Cleland,* 33 Ill. 238.) He had a right of access to the books, records and papers of the corporation for any investigation he chose to make, and was not required to sell the stock without full information as to all facts affecting its value. It is true that the bill alleged that Beatty denied the possession of any inventory when he had a stock ledger showing the raw and finished material on hand. The bill, however, does not show that this stock ledger would answer the purpose of an inventory, and from the nature of the book the presumption is that it did not contain the values which would be set down in an inventory. The statement is not shown to be false, and, at any rate, the amount of raw and finished material on hand was open, apparently, to sight and observation of complainant's representative or anybody else. It was not alleged that there was any refusal of the privilege of a stockholder to see any of the books of the company, and if there had been it would arouse the suspicion of a reasonable man, and complainant could either insist upon his rights or refuse to sell.

The bill alleged that complainant advised Beatty, in case a sale did not occur under the option, he would re-assert his right to the stock; that this right was recognized and acquiesced in by Beatty, who informed him in November, 1899, that the option had expired, and made an offer to return the stock upon complainant's refunding the money paid, with interest. The offer to return the stock was not accepted, but the complainant filed his bill asking the court to determine

whether he should be re-instated as a stockholder upon reasonable terms or Beatty should be compelled to pay more money. The apparent purpose of the bill was to hold the status and ascertain the facts so that complainant might determine, at his leisure, whether it would be more profitable to him to retain the money and let Beatty keep the stock or accept the offer. As he alleged that the agreement was he might re-assert his right to the stock and Beatty was ready and willing to perform the agreement while complainant refused to do so, we are unable to see, by his own showing, what further right the complainant had. We do not think that a court of equity is to be used merely for the purpose of enabling complainant to determine whether he can make more money by affirming or disaffirming the sale. If complainant had accepted Beatty's offer, which he says was in accordance with the agreement, he would have been re-instated as a stockholder, so that he could have protected any right he had and would have taken the chances of profit or loss.

Aside from the foregoing considerations, if there were actual and active fraud on the part of Beatty the sale would not be void but only voidable at complainant's election, after being possessed of the necessary information. In such a case he could have the sale set aside. But Beatty had already offered to do that. As the option existing at the time the sale was made expired and a new sale was made by which there was a transfer to the American Sheet Steel Company, it is now immaterial what the original option was. Complainant alleged that he had found out, by the testimony, that the sale was made for a certain number of shares of preferred and common stock of the trust; that when he made the sale Beatty estimated the value of preferred stock in some contemplated trust at $90 and common stock at $60 per share. On that ground he prayed that defendants be required to pay him, in addition to the $18,000 already paid, the excess in value of two hundred and forty shares of preferred stock

and two hundred and forty shares of common stock at such estimated value. The bill contained no averment that Beatty agreed to pay the price stated for the stock to be issued, but only that he estimated the value of such stock in a proposed trust to be issued in the future at those prices. It was plainly nothing but a matter of opinion, about which the complainant could form a judgment himself, and for which Beatty would not, in any event, be liable. Plainly no agreement was alleged to take the stock and to pay for it at such prices. No such absurd intention could be attributed to any reasonable business man.

Complainant invokes the rule that in actions of trover for the conversion of personal property the right of action is complete when the conversion takes place, and the action is not barred by an offer to return the property. We are unable to see how that rule applies to this case. There was no conversion of the property, but only a right of election, in case of fraud, to affirm or disaffirm the sale, and that election the complainant refused to exercise. Beatty was not the agent of complainant and did not in that capacity fraudulently convert the stock and realize profits out of it, and there was no trust which would enable complainant to claim the profits of a transaction realized by a trustee with his property.

We see no ground whatever upon which the bill could be maintained, and the court was clearly right in sustaining the demurrer.

The court refused to permit further amendments, and in doing so did not abuse its discretion. Complainant had been engaged for years in amending his bill, and he made an unprecedented number of amendments. The record does not show any respect in which the bill could be amended, and no amendment was presented to the court, and none is now suggested, which would enable the complainant to state a good ground for relief. The bill was properly dismissed, and the judgment of the Appellate Court affirming it was correct.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*