Anshel Shamberg et al., Appellees, v. Willard P. Stearns, Appellant.

Gen. No. 17,312.

1. FRAUD—*when representations not relied on.* A lease will not be canceled on the ground that complainant was induced to lease premises to be used as a tannery by false representations of the lessor that the necessary permit from the department of health had been secured, where it appears that at complainant's request the parties interviewed an official of the department of health to ascertain whether the business might be conducted and that the lease was not executed until complainant was assured by such official that the work might safely be done there.

2. LANDLORD AND TENANT—*presumption that lease contains terms of contract.* A lease in writing entered into after certain oral and written agreements were made relating to the subject-matter thereof is presumed to embody all the terms of the contract between the parties.

3. FRAUD—*effect of promise to do something in future.* Where cancellation of a lease is sought on the ground that defendant falsely represented that a permit to operate a tannery was obtained, even if evidence that defendant orally agreed to cancel the lease if permission was later denied is competent, it cannot aid complainant, since fraud cannot be predicated on a promise to do something in the future.

Appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded with directions. Opinion filed April 9, 1913.

JOHN SCHWENDER, for appellant.

NICOLAS J. PRITZKER, for appellees.

MR. JUSTICE BAUME delivered the opinion of the court.

Appellees, Anshel Shamberg and H. Alswang, filed their bill in equity in the Circuit Court against the appellant, Willard D. Stearns, wherein they alleged that on or about February 10, 1909, appellant offered to rent certain premises in the City of Chicago to appellees for the purpose of tanning leather for razor strops; that appellant was informed and knew that the manufacture of leather usually emitted a disagreeable odor and was only permitted in certain parts of the city, and also was informed and knew that in order to occupy the premises for that purpose it would be necessary to obtain a permit from the department of health; that appellant then informed appellees that he had consulted with the authorities and had been given a permit to rent the premises for the desired purpose and stated to appellees that in the event that such permit was canceled or withheld, he would release appellees from any lease which they might enter into; that relying upon said statements and representations made by appellant, appellees, on February 18, 1908, entered into a lease of said premises, and went into possession of the same and commenced the business of manufacturing leather therein; that shortly thereafter the city authorities directed appellees to discontinue said business and appellees then learned for the first time that the representations made by appellant as to obtaining the necessary permit from the health department were not true; that said representations were made solely for the purpose of inducing appellees to execute said lease, and that appellees executed the same relying wholly upon the said representations of appellant, and immediately informed him that they had been directed to discontinue their busi-

ness in said premises and demanded of him the cancellation of said lease, but that he refused to cancel the same; that in compliance with the said direction of the health department appellees vacated the premises on or about June 30, 1909, and paid the rent therefor up to that time and have not since occupied the same; that on October 6, 1909, appellant caused a judgment by confession to be entered against appellees in the Municipal Court for $220, being for four months' rent and for attorney's fees, and that appellant threatens and will, unless enjoined, confess judgment on said lease each and every month up to the end of the term, to-wit, April 30, 1910; that on November 24, 1909, an execution was issued upon said judgment, and levied upon certain property belonging to appellees, and unless the bailiff of said Municipal Court be restrained he will proceed to sell said property to satisfy said judgment. The bill prays that the said judgment be set aside and vacated; that the said lease be canceled; that appellant be restrained from further confessing any judgment on said lease, and that a sale of the property under said execution be enjoined. Appellant answered the bill denying its material allegations, and upon a hearing before the chancellor, a decree was entered in accordance with the prayer of the bill.

The decree is attacked upon the ground that the charges of fraud and misrepresentation alleged in the bill are not supported by the evidence.

Appellee, Alswang, testified that when the proposal to rent appellant's premises was under consideration, he expressed his doubts as to whether the building was a proper place for tanning; that appellant said he thought it was, and would take care of it right from the start; that appellant visited the place where witness was then conducting a tannery for the purpose of determining whether or not it would be advisable to move the business to his premises; that he showed the condition of the place to appellant and told him

that the conditions were worse than they would be in his premises where there was a cement floor; that a couple of days later appellant told him he would go to the health department and investigate thoroughly; that upon the day the lease was executed appellant told him that he had been to the health department and investigated, and that witness should not worry about it, but sign the lease, move in and conduct his business; that he told appellant that the latter must realize that if witness should have any trouble after he moved in he would be almost a ruined man, and that he had not investigated, but relied on appellant; that appellant replied, "I am the power behind the throne, go ahead and work, don't be foolish."

Appellee Shamberg, testified that he told appellant that they wanted and could use his place if the city would allow them to start a tannery, but that they were afraid the city might stop them; that appellant then went out and looked at the place that Alswang was conducting; that the next time he saw appellant the latter said he was satisfied, but witness was not satisfied and wanted appellant to go with him to the City Hall; that he accompanied appellant to the City Hall, where they met a man to whom appellant spoke, and the man said he didn't think the business would be stopped; that at the end of the conversation with the man appellant said it would be all right, he was going to take care of it, and in case they were stopped they would not be required to pay any money or to use the place; that he took appellant's word more than anything else.

Appellant testified that after having visited the place occupied by Alswang he told Shamberg, who desired to rent his premises, that, as far as he was concerned, the business would not be objectionable to him; that the question then came up as to whether or not the business would be objectionable to the city, and he accompanied Shamberg to the health department,

where they saw a party supposed to be the officer in charge, to whom Shamberg stated what they wanted and what the business was; that the health officer made inquiries of Shamberg as to how the work was done and after considering the matter said he thought it would be safe for appellees to conduct their business in the proposed new location; that he then told Shamberg that appellees could have the place if they wanted, and that appellees then signed the lease. Appellant further denied having made any statement or promises other than those embodied in the lease.

The written proposal for the lease signed by appellees and the written acceptance of such proposal signed by appellant were introduced in evidence. These writings embody the agreements of the parties with reference to the terms of the proposed lease and certain improvements and changes in the premises to be made by appellant, and the lease as executed conformed to the terms of such agreement.

On April 29, 1909, appellees were notified by the health department to discontinue making hides in preparatory processes to tanning, on account of foul odor from "bait." The business was abated on June 28th following, and appellees then vacated the premises.

J. A. Spallard, one of the inspectors in the health department, testified that upon the occasion when he inspected the premises occupied by appellees he asked them how they came to be there, by what authority, and that appelles told him that they had permission from the secretary, if they didn't commit a nuisance.

Section 692 of the Municipal Code provides, in part, as follows:

"It shall not be lawful for any person or corporation to locate, build, construct or maintain, on any street or alley in the city, in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building for a boarding, livery or sale stable, gas reservoir, blacksmith shop, foundry, packing house, rendering

plant, soap factory, tannery, etc., without the written consent of a majority of the property owners to frontage, on both sides of such street or alley."

The chancellor appears to have granted the relief prayed for in the bill upon the ground that, in leasing the premises to appellees to be used as a tannery, appellant was guilty of a violation of said section of the Municipal Code, and that said lease was thereby rendered void and unenforcible.

The relief prayed in the bill is predicated solely upon the alleged false and fraudulent representations of appellant, whereby appellees were induced to execute the lease in question. The jurisdiction of a court of equity is invoked upon that ground alone, and unless the proof sustains the allegations of the bill in that particular appellees are not entitled to the relief prayed.

It is not controverted that appellant and appellee, Shamberg, at the solicitation of the latter, interviewed one of the officials connected with the department of health for the express purpose of ascertaining whether the work in question, as performed by appellees, might properly be carried on in the building belonging to appellant, and that the lease was not executed until appellees were assured by such official that they might safely do the work there. The proof shows that appellees did not rely upon the representations of appellant, if any such were made, but that they insisted upon making an independent investigation of the subject, and that they relied upon the result of such investigation. Under such circumstances appellees are not entitled to invoke the aid of a court of equity for the purpose of procuring a cancellation of the lease. Crocker v. Manley, 164 Ill. 282; Hooker v. Midland Steel Co., 215 Ill. 444.

The lease is a contract in writing and is presumed to embody all the terms of the contract between the parties.

If evidence, tending to show that appellant orally

agreed to cancel the lease if a permit to appellee to conduct the business was denied, had been competent, it would avail appellees nothing, because fraud cannot be predicated upon a promise or agreement to do something in the future. Miller v. Sutliff, 241 Ill. 521.

The decree is reversed and the cause remanded with directions to dismiss the bill.

*Decree reversed and cause remanded with directions.*