MAYFLOWER HOTEL STOCKHOLDERS
PROTECTIVE COMMITTEE et al. v.
MAYFLOWER HOTEL CORPORATION
et al.

Civil Action No. 1192—47.

District Court of the United States for the
District of Columbia.

Oct. 14, 1947.

Edmond L. Jones (of Hogan & Hartson) and Roger J. Whiteford (of Whiteford, Hart, Carmody & Wilson), all of Washington, D. C., and Claude A. Roth, of Chicago, Ill., for defendants, for the motion.

John Lewis Smith, Jr., Leslie C. Garnett, John Lewis Smith, and Samuel Beach, all of Washington, D. C., for plaintiffs, opposed.

HOLTZOFF, Justice.

This is a derivative stockholders' suit brought by the minority stockholders of the Mayflower Hotel Corporation against the directors and the majority stockholders. The matter comes before the Court on a motion by the defendants to dismiss the amended complaint for failure to state a cause of action. The plaintiffs consist of a number of individual minority stockholders as well as the Mayflower Hotel Stockholders Protective Committee.

In view of the fact that a stockholders' suit may be brought solely by persons who were stockholders of the corporation at the time that the cause of action accrued and who are still stockholders at the time of the institution of the suit, the plaintiff, Mayflower Hotel Stockholders Protective Committee, has no right to bring this action, since the Committee is not and never has been a stockholder, insofar as appears from the allegations of the complaint. Moreover, there is no allegation that the Committee is a body corporate, and in fact it was admitted on the argument that the Committee is an unincorporated group.

It is settled in the District of Columbia that a partnership or an unincorporated association may not sue in its own name, Fennell v. Bache, 74 App.D.C. 247, 123 F.2d 905. Rule 17(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that a partnership or an unincorporated association may sue in its common name in a Federal court to enforce a right under the Constitution and laws of the United States. In other words, a partnership or an unincorporated association may sue as such to vindicate a Federal right as distinguished from a right arising out of local law. This suit is not based on any Federal right. Therefore, the local law as to the capacity to sue prevails.

For both these reasons the complaint must be dismissed as to the Mayflower Hotel Stockholders Protective Committee.

Passing to the other plaintiffs, they are alleged to have been shareholders at the time the cause of action accrued. It must be borne in mind that a stockholders'

suit is a suit brought in behalf of the corporation. The test of the sufficiency of a complaint in such an action is two-fold: first, whether it states a good cause of action in behalf of the corporation; and, second, whether it shows that attempts have been made to induce the corporation to bring suit in its own behalf and these endeavors have proved unavailing, or that it would have been futile to make such efforts.[1]

The Court is of the opinion that the second requirement is sufficiently complied with by the allegations contained in paragraph VIII of the amended complaint. The question to be determined, therefore, is whether the amended complaint sets forth a good cause of action in favor of the Mayflower Hotel Corporation.

The pertinent facts as they appear in the amended complaint are briefly as follows: The Hilton Hotels Corporation, which is apparently a corporation engaged in the business of buying and operating hotels, purchased a majority of the stock of the Mayflower Hotel Corporation, which owns and operates the Mayflower Hotel in Washington, D. C. Thereafter the Mayflower Hotel Corporation and the Hilton Hotels Corporation entered into a contract, which is denominated in this suit as a management contract, whereby for a compensation specified in the agreement the Hilton Hotels Corporation undertook to perform certain functions of management for the Mayflower Hotel. It is alleged in the complaint that the majority stockholders of the Mayflower Hotel Corporation sold their stock to the Hilton Hotels Corporation at a price considerably lower than that which they could have secured from another prospective purchaser. It is further alleged that the management contract is disadvantageous to the Mayflower Hotel Corporation.

■■ The complaint is rather involved and somewhat lengthy. It is a tangled web, but when we laboriously separate all the strands, two alleged causes of action seem to emerge from the numerous allegations. The first is the charge that the majority stockholders sold their stock, for reasons best known to themselves, at a price much lower than they could have secured elsewhere, and that thereby the minority stockholders were damaged, presumably because the value of their shares was adversely affected by this transaction. It must be borne in mind, as heretofore stated, that this is an action in behalf of the corporation, and the question is whether a cause of action is stated on its behalf. A corporation may not complain of the fact that a stockholder has sold his stock at a price less than it was worth or at a price less than he could get from other purchasers. A stockholder, even if he is a director, is at liberty to sell his stock to anyone he pleases, at whatever price he chooses, even if the sale consummated by him may adversely affect the value of shares owned by other stockholders. It is my opinion, therefore, that insofar as the first aspect of the complaint is concerned no cause of action is stated.

■ The second alleged cause of action arises out of the averments regarding the management contract. It is charged that the management contract was entered into between the Mayflower Hotel Corporation and the Hilton Hotels Corporation as a result of the fact that the two companies had interlocking directors; that the Hilton Hotels Corporation was in control of the board of directors of the Mayflower Hotel Corporation, and that because of these circumstances the contract was highly favorable to Hilton and exceedingly disadvantageous to Mayflower. There is indeed no question that a contract between corporations with interlocking directors will be scrutinized with care. Probably much less proof of fraud would be exacted to set aside such a contract than is required in the case of a contract between persons or concerns dealing at arm's length. In fact, there are some expressions in the cases to the effect that a contract between corporations with interlocking directors is presumed to be fraudulent. The Court's attention, however, has not been called to any case in which the mere existence of interlocking directors was sufficient to vitiate a contract between two corporations.

---

[1] Federal Rules of Civil Procedure, Rule 23(a).

724

I do not conceive that the phrase, sometimes somewhat loosely used, that such a contract is presumed to be fraudulent, means that a minority stockholder is authorized to bring suit to set the contract aside merely on the allegation that the parties to the contract have interlocking directors and that the plaintiff is thereupon in a position to call upon the parties to the contract to justify their good faith. I am not aware of any case that holds such an extreme proposition. My view of the law is that what is intended by these expressions is that much less evidence will be required to establish a prima facie case and to shift the burden of proof on the question of fraud than would otherwise be the case, if it appears that interlocking directorates exist, rather than that the plaintiff makes out a prima facie case merely by showing the presence of interlocking directors.

There is another principle of law which appears to the Court pertinent in disposing of this case. This principle is that the board of directors has a right to manage and control the business of a corporation and that a minority stockholder is in no position to secure the avoidance of a contract made by the company of which he is a shareholder merely on a showing that the contract was improvident or that it was disadvantageous to the company, or that good judgment on the part of someone else might have led to the making of a different contract. Whichever way the presumption may be involves after all merely a question of burden of proof. There must be a showing that the contract sought to be avoided is fraudulent or so grossly inequitable as to be constructively fraudulent. There are no allegations in this complaint which meet this test. There are, indeed, averments which question the business judgment of the directors in making this contract. Whether this contract is advantageous to the company is a matter of opinion and the Court will not substitute its own views for the judgment of the directors.

There are no sufficient allegations indicating either actual or constructive fraud in the making of the contract. True, the complaint uses the word "fraudulent." Under the Federal Rules of Civil Procedure this is not adequate. Although as to all other matters it is sufficient to plead a conclusion of fact and evidentiary facts or particulars need not be—in fact, should not be—set forth in a pleading, the rule is otherwise as to allegations of fraud and allegations of mistake. The rules specifically require that allegations of fraud and allegations of mistake be particularized.[2] Consequently, the mere use of the adjective "fraudulent" does not create a cause of action.

For the reasons I have indicated I am of the opinion that no cause of action is set forth and the motion to dismiss the amended complaint is granted.

---

[2] Federal Rules of Civil Procedure, Rule 9(b).