[No. 30915.   Department Two.   January 19, 1950.]

VICTOR MORRISON, *Appellant,* v. R. J. ULTICAN *et al.,*
*Respondents.*[1]

[1]Reported in 213 P. (2d) 617.

*Lester T. Parker* and *L. B. Donley,* for appellant.

*Theodore B. Bruener* and *Clark W. Adams,* for respondents.

MALLERY, J.—Victor Morrison, owner of Grays Harbor Public Log Dump, Inc., hereinafter called Log Dump, brought this action for accounting against defendants, the other partners in Ulmidmor, a partnership. Plaintiff appeals from a judgment in favor of the defendants.

In 1943, respondents, timber owners and sawmill operators, were strongly motivated to expedite logging and milling in the Grays Harbor area to meet their commitments on war-time contracts. Log Dump was engaged in performing three logging contracts hereinafter called the Weyerhaeuser, Ultican and Saginaw contracts. The first two were to be performed prior to December 31, 1944, the latter prior to November 30, 1944. This litigation concerns a plan which, from respondents' point of view, was an auxiliary device to assure them a ready source of urgently needed lumber.

November 18, 1943, appellant and respondents joined to form the partnership Ulmidmor for the exclusive purpose of assuring performance of these Log Dump contracts. Appellant and respondent Ultican contributed thirty thousand dollars each; the others contributed the balance of the total ninety thousand dollars of contributed capital. The partnership contract provided for profit and loss sharing in proportion to capital contribution, for control by partners representing a majority of contributed capital, for no borrowing without written consent of all partners, and for dissolution on completion of Ulmidmor's exclusive purpose.

The same day, Ulmidmor contracted to finance and equip Log Dump for the performance of its three contracts. In exchange, Log Dump promised faithfully to perform its three contracts, to channel all contract payments through

Ulmidmor and to pay Ulmidmor fifty cents a thousand for timber delivered under the contracts. The contract also provided that upon Log Dump's default on any of the logging contracts, Ulmidmor could assume control of Log Dump's operations to complete performance thereof.

Pursuant to the contract, Log Dump, with Ulmidmor's money and equipment, commenced logging the three tracts. Substantial amounts of timber were felled and bucked under each contract.

Late in 1944 appellant became dissatisfied. Accentuated by the dual relationships of the several partners, especially that of Mr. Ultican, personal differences between appellant and respondents became especially acrimonious when Log Dump failed to complete any of its contracts on time.

Weyerhaeuser was willing to extend its contract with appellant. Ulmidmor contended that it had the right to make the extension but Weyerhaeuser dealt exclusively with Log Dump. The Weyerhaeuser-Log Dump one year extension included financial provisions repugnant to the Ulmidmor-Log Dump contract.

January 1, 1945, Mr. Ultican, as timber owner, terminated his Log Dump contract by forfeiture.

The Saginaw contract was not terminated.

Eager to complete the Weyerhaeuser logging within the year extension, Log Dump subcontracted with other loggers and continued Weyerhaeuser operations. Appellant disapproved of Ulmidmor's further activities in securing performance of the Ultican and Saginaw contracts on the ground that they would prove unprofitable.

Ulmidmor, on the other hand, motivated by respondents' interest in early availability of lumber to meet their contract commitments, assumed control of Log Dump's logging operations, in accordance with Ulmidmor-Log Dump contract, and continued Ultican and Saginaw logging.

During this period of disagreement, the parties, seeking harmony, negotiated in vain for a revision of the partnership contract.

January 30, 1945, Saginaw contracted with Ulmidmor to extend the Saginaw-Log Dump contract to October 31, 1945,

and Ulmidmor, as Log Dump's assignee, promised to complete the logging by that date. This extension, signed by *all* the partners, recited that Ulmidmor was also logging Ultican's tract.

To implement its decision to log Ultican and Saginaw, Ulmidmor subcontracted with loggers to do the work. Appellant signed this subcontract, also.

In July, 1945, fire destroyed machinery and logs and damaged standing timber on the Ultican and Saginaw tracts. Prior to the fire the logging was profitable; thereafter it was not.

October 8, 1945, appellant, by letter to each copartner, expressed dissatisfaction with Ulmidmor's management, explained that he signed Ulmidmor's subcontract with the loggers on the condition that the partnership contract would be revised, a condition which had not occurred, disclaimed liability on all operations beyond the scope of the partnership contract, and expressed eagerness to proceed with Ulmidmor's dissolution as soon as he had completed Weyerhaeuser's logging. This was not appellant's only expression of dissatisfaction, but it is the most definitive formal effort made to limit his liability prior to commencement of this action.

Eventually, Ultican and Saginaw logging was completed at great loss. The final balance sheet revealed exhaustion of all contributed capital as well as debts of about twenty thousand dollars to third parties and to Messrs. Ultican and Middleton on advances.

Appellant is unwilling to bear his share of the loss. He disclaims liability as a partner and seeks adjustments in the final accounting on certain items of loss to which he did not specifically consent.

Trial was held in two phases. In the first it was held that Ulmidmor was not dissolved prematurely by appellant's acts and that he was a partner during its entire existence. In the second phase it was held that the accounting, as evidenced by the final balance sheet, was substantially correct and that appellant was not entitled to any adjust-

ments, there being no fraud or breach of duty, and that he was liable to the liquidator for an amount in excess of five thousand dollars as his share of the losses.

Implicit in each of appellant's assignments of error is the contention that, either at the point when the Ulmidmor-Ultican contract was made, or when respondents borrowed and advanced money in violation of the partnership contract, or after appellant's October 8, 1945, letter, appellant ceased to be a partner with a partner's liabilities.

Appellant's expressions of dissatisfaction over respondents' breach of the partnership contract by the making of the Ulmidmor-Ultican contract were equivocal. He consented to the variance from the partnership contract by signing the Ulmidmor-Saginaw contract and Ulmidmor's subcontract with the loggers who were to perform the Ultican and Saginaw logging. The October 8th letter, upon which appellant strongly relies, does not dissolve the partnership or terminate his liability, since it admits his status as partner and expresses eagerness for early dissolution of the partnership, thus acknowledging its continued existence on that date. The letter's denial of liability on Saginaw and Ultican operations is equivocal in view of appellant's signature on the Ulmidmor-Saginaw contract and on the logger's subcontract.

We hold with the trial court, on this phase of the case, that the partnership was not prematurely dissolved and that appellant continued to be a partner throughout Ulmidmor's existence.

Also implicit in appellant's assignments of error is his reliance on general equity principles of fairness and justice. The facts did not invoke the court's special equity powers. Appellant freely made his own bargain. The losses occurred for a variety of reasons, including, among many others, an unfortunate fire and appellant's own breaches of the three logging contracts. There is evidence that several of the parties to this action were acting in dual and triple relationships, which is not commendable, but appellant was aware of all this when the partnership was formed and he

has failed to prove any losses attributable to breach of a partner's fiduciary obligations. With these preliminary observations in mind, the assignments of error are reviewed.

Appellant contends that the court erred in holding appellant liable for money borrowed in violation of paragraph nine of the partnership contract. These assignments of error refer to two types of loans: bank borrowings and advances made by partners Ultican and Middleton.

The decree required appellant to share the excess of Ulmidmor's liabilities over its assets as indicated by the final balance sheet. No bank loans are indicated on the final balance sheet. Respondents admit that they borrowed in breach of the partnership contract, but it does not appear that the operative losses are attributable to these technical breaches. Indeed it could well be that the unauthorized borrowings reduced Ulmidmor's ultimate losses by enabling performance of the logging contracts, which, if breached, could have entailed heavy damages for which the partnership would have been liable.

The same reasoning applies to advances by Messrs. Ultican and Middleton, complained of in appellant's third assignment of error. Moreover we note that Rem. Supp. 1945, § 9975-57 (a) and (c); 7 U. L. A. § 18 (a) and (c), entitled a partner to repayment for advances. In the absence of express limitation on advances by the partnership contract, this statute infers a partner's right to advance money for carrying on the partnership business. This partnership contract does not specifically prohibit voluntary advances by a partner. It only prohibits less than all the partners borrowing from third parties.

A partner's right to reimbursement for advances is qualified only by the requirement that the money be spent on the proper conduct of partnership business. See *Goldring v. Chudacoff*, 15 Cal. App. (2d) 741, 60 P. (2d) 135, noted in 7 U. L. A. 107.

Performance of the Saginaw and Ultican contracts, for which the sums were advanced, was within the scope of the partnership business because all the partners signed

the Saginaw extension and Ulmidmor subcontracted with the loggers who were to log the Saginaw and Ultican tracts. The making of these contracts subjected the partners to the possibility of the losses which did occur in their performance. Appellant has shown no relationship between the losses and the breaches complained of.

Appellant also contends that the court erred in holding him liable for losses sustained on the Saginaw and Ultican contracts because they were made beyond the scope of the exclusive purpose of the partnership as expressed in the partnership contract.

The original Log Dump-Saginaw contract was not terminated. Appellant acknowledged by his signature on the extension of it that, on Log Dump's default, it had been properly assigned to Ulmidmor, pursuant to the Ulmidmor-Log Dump contract. The performance of it was precisely the purpose of the partnership contract.

The case of the Ultican contract is somewhat different. Ultican terminated his Log Dump contract by forfeiture so that it ceased to exist. The Ulmidmor-Ultican contract was a *new* contract, and as such, was beyond the scope of the partnership's exclusive purpose, *viz.*, the accomplishment of the three Log Dump contracts existing November 18, 1943.

Appellant however cannot complain of this breach because, by signing the Ulmidmor-Saginaw contract and Ulmidmor's subcontract with the loggers, he consented to the substitution of the new contracts for the one included in the partnership contract, which before the formation of the partnership had been his own and for the breach by nonperformance of which he would have been liable.

Appellant contends that the court erred in holding him liable for losses sustained by the loggers of the Ultican and Saginaw tracts after October 8, 1945. He concedes that he signed and ratified the loggers' subcontract with Ulmidmor, but contends that Ulmidmor suffered losses in connection with this contract for which he should not be liable

due to respondents' fraud, deliberate waste and mismanagement.

■ The acts of partners serving in dual relationships where their private motives may color their actions in their partnership capacity, must of course be closely scrutinized for possible breach of the fiduciary duty of partners.

Appellant knew that respondents' motive in forming the partnership was less to make profits out of the logging operations and more to serve their need of securing logs. We agree with the trial court that no fraud or misrepresentation was shown.

■ The contention under this assignment is little more than a complaint against Ulmidmor's management. In this respect, appellant is bound by the partnership contract, which provides that management shall be exercised by partners representing a majority of the contributed capital. Respondents met this requirement.

The judgment is affirmed.

SIMPSON, C. J., ROBINSON, HILL, and HAMLEY, JJ., concur.