**J. Edward DAY, Plaintiff,**

v.

**SIDLEY & AUSTIN et al.,
Defendants.**

**Civ. A. No. 74–1112.**

United States District Court,
District of Columbia.

May 29, 1975.

Austin F. Canfield, Jr., Washington, D. C., for plaintiff.

James J. Bierbower, Alvin B. Davis, Washington, D. C., for defendants.

## MEMORANDUM OPINION

PARKER, District Judge.

This case involves a dispute between a former senior partner of Sidley & Austin (S&A), a Chicago law firm, and some of his fellow partners. The controversy centers around the merger between that firm and another Chicago firm, Liebman, Williams, Bennett, Baird and Minow (Liebman firm), and the events subsequent to the merger which ultimately led to plaintiff's resignation. Plaintiff seeks damages claiming a substantial loss of income, damage to his professional reputation and personal embarrassment which resulted from his forced resignation.

The matter is now before the Court on defendants' motion for summary judgment. After consideration of the pre- and post-hearing memoranda of counsel, answers to interrogatories, affidavits, and oral arguments, this Court concludes that defendants' motion for summary judgment should be granted.

On July 1, 1974, plaintiff J. Edward Day filed a complaint in the Superior Court for the District of Columbia against Sidley & Austin itself,

and 12 named partners (members of the firm's executive committee) alleging breach of fiduciary duty, breach of contract, fraud and misrepresentation, conspiracy, wrongful dissolution or ouster of co-partner and breach of partnership agreement. Thereafter, the individual defendants who had then been served filed a petition for removal in the United States District Court for the District of Columbia.[1] Federal jurisdiction is conferred by reason of diversity of citizenship and the amount in controversy exceeding $10,000. 28 U.S.C. § 1332. On October 8, 1974, this Court denied plaintiff's request for a remand to the Superior Court and quashed service on those individual defendants who had been served with Superior Court process after removal had become effective. Service against the partnership itself was quashed.[2] As of this date, plaintiff has served eleven of the individual defendants.

As an initial response to the motion for summary judgment plaintiff asserts that the motion should be denied because it is premature since "extensive discovery" is contemplated including depositions to supplement the interrogatories that have already been answered. In Washington v. Cameron, 133 U.S.App. D.C. 391, 411 F.2d 705 (1969), the district court was reversed for precipitously granting defendant's summary judgment motion on the basis of an *ex parte* administrative determination of fact, before plaintiff had had a chance to conduct any discovery. The caution and restraint dictated by *Cameron* was clearly warranted by its facts, the record and the state of the pleadings. Such an approach is not mandated by the record in this proceeding. Here, the plaintiff has conducted discovery by way of interrogatories, has filed several personal affidavits, and defendants have submitted key documents such as the Partnership Agreements of Sidley & Austin and the Memorandum of Understanding governing the proposed merger of S&A and the Liebman firm. The partnership agreements and other essential undisputed facts and relevant documents present questions of law and the Court sees no reason why the motion for summary judgment is untimely. *See* E. P. Hinkel & Co. v. Manhattan Co., 506 F.2d 201 (D.C.Cir. 1974).

### The Factual Background

The basic and material facts in this controversy may be briefly detailed.

Mr. Day was first associated with Sidley & Austin in 1938. His legal career was interrupted by World War II service in the Navy and by his tenure with both the Illinois state government and as Postmaster General of the United States. Upon leaving the federal government, he was instrumental in establishing a Washington office for the firm in 1963. As a senior underwriting partner, he was entitled to a certain percentage of the firm's profits, and was also privileged to vote on certain matters which were specified in the partnership agreement. He was never a member of the executive committee, however, which managed the firm's day-to-day business. He remained an underwriting partner with Sidley & Austin from 1963 until his resignation in December 1972.

At some time between February 1972 and July 12, 1972, S&A's executive committee explored the idea of a possible merger between that firm and the Liebman firm. S&A partners who were not on the executive committee were unaware of the proposal until it was revealed at a special meeting of its under-

---

1. Pursuant to 28 U.S.C. § 1441.

2. The common law rule in the District of Columbia is that a partnership cannot sue or be sued as a separate entity. *See*: Mayflower Hotel Stockholders v. Mayflower Hotel Corp., 73 F.Supp. 721 (D.D.C.1947), rev'd on other grounds, 84 U.S.App.D.C. 275, 173 F.2d 416 (1949) ; Fennell v. Bache, 74 App.D.C. 247, 123 F.2d 905 (1941) ; Matson v. Mackubin, 61 App.D.C. 102, 57 F.2d 941 (1932) ; National Ass'n for Community Development v. Hodgson, 356 F.Supp. 1399, 1402 (D.D.C.1973).

writing partners on July 17, 1972. At that meeting, each partner present, including plaintiff, voiced approval of the merger idea and favored pursuing further that possibility in such manner as the executive committee of S&A might think proper or advisable, with the understanding that any proposed agreement would first be submitted to all partners for their consideration before any binding commitments were made. The merger was further discussed at meetings of the underwriting partners held on September 6, September 22, September 26 and September 28. The plaintiff received timely notice of the meetings but did not attend.

The final Memorandum of Understanding dated September 29, 1972 and the final amended Partnership Agreement, dated October 16, 1972 were executed by all S&A partners, including plaintiff. The Memorandum incorporated a minor change requested by plaintiff.

At a meeting of the executive committee of the combined firm on October 16, 1972, it was decided that the Washington offices and the Washington office committees of the two predecessor firms would be consolidated. The former chairmen of the Washington office committees of the two firms were appointed co-chairmen of the new Washington Office Committee.[3]

In late October of 1972, the new Washington Office Committee recommended to the Management Committee that a combined Washington Office be set up at 1730 Pennsylvania Avenue, thus eliminating the old S&A Washington office in the Cafritz Building. A decision was then made to move to the new location despite plaintiff's objections.

Mr. Day resigned from Sidley & Austin effective December 31, 1972 claiming that the changes which occurred after the merger in the Washington Office—the appointment of co-chairmen and the relocation of the office—made continued service with the firm intolerable for him.

Plaintiff has made certain allegations which are not conceded by defendants. As to these matters, plaintiff's allegations have been given the benefit of all reasonable doubts and inferences.[4]

Mr. Day contends that he had a contractual right to remain the sole chairman of the Washington Office, and that the maintenance of this status was a condition precedent for his rejoining the firm in 1963 and opening the Washington office. According to plaintiff, the decision to appoint co-chairmen was made prior to the merger and defendants' concealment of that decision was a material omission and without that prior information his vote of approval for the merger would not have been given.

He further alleges that certain active misrepresentations about the results of the proposal also had the effect of voiding the approval of the merger. These other alleged misrepresentations were:

(1) that no Sidley partner would be worse off in any way as a result of the merger, including positions on committees;

(2) that two senior partners of the Liebman firm would soon be leaving law practice;

---

3. Day was not a member of the executive committee of the merged firm. He had been the chairman of the S&A Washington Office and John Robson had been chairman of the equivalent Liebman office before the merger. Day contends that the decision to have co-chairmen had been made well before the October 16 executive committee meeting and indeed, the alleged concealment of this fact forms the basis for plaintiff's claim that the approval of the merger was fraudulently induced. There is no dispute, however, that the matter was finalized and made known to plaintiff as of October 16th.

4. 10 Wright & Miller, Federal Practice and Procedure § 2725, at 510 (1973). *See:* Day v. United Automobile, Aerospace and Agricultural Implement Workers of America, Local 36 of UAW, 466 F.2d 83 (6th Cir. 1972); Gross v. Southern Railway Co., 414 F.2d 292 (5th Cir. 1969); Cox v. American Fidelity & Casualty Co., 249 F.2d 616 (9th Cir. 1957).

(3) that the merged firm would drop representation of a certain Liebman client whose interests might conflict with some Sidley clients;

(4) that the merger with Liebman would be advantageous to the Sidley partners and would add to the standing and prestige of the firm;

(5) that all aspects of the merger had been exhaustively investigated by defendants; and

(6) that there were good, sound, objective reasons which made the merger highly desirable.

Plaintiff also alleges that the fact that the Liebman firm had been shopping around for a merger partner for 10 years was concealed.

Events after the merger, allegedly void because of the mentioned omissions and misrepresentations, inevitably led to plaintiff's resignation. The loss of his status as sole chairman of the Washington office was viewed by plaintiff as a humiliating experience, especially as it was accompanied by harrassment by the defendants. Day points to the method of handling the relocation of the consolidated firm as the most obvious manifestation of the defendants' intent to force his resignation. In an affidavit submitted by plaintiff, he asserts that the process of approving the office move entailed a series of meetings held and decisions made without consulting him, all in derogation of his former status as the final decision maker for the S&A Washington office.

Defendants do not concede that misrepresentations or omissions tainted the approval of the merger, nor do they admit engaging in harrassment techniques intended to force plaintiff to resign. The thrust of defendants' argument for summary judgment is that plaintiff's factual allegations are not material because they fail to state a cause

of action. Defendants contend that any possible taint of plaintiff's vote in favor of the merger is of no consequence because only a majority, and not unanimous consent, was required for the merger under the provisions of the partnership agreements. Defendants also contend that any diminution of status as perceived by plaintiff cannot have any legal consequences because he had no vested contractual right to remain the sole chairman. They rely on the terms of the partnership agreements to support this defense. Under the agreements, the Executive Committee had the authority to govern the composition of all other firm committees and no special provisions had been made as to plaintiff's vested right in the Washington office.

An analysis of the adequacy of each of plaintiff's causes of action follows.

### FRAUD

Plaintiff contends that the pre-merger representations, set forth above, were fraudulent, that the approval based on such misrepresentations was wrongfully obtained and illegal and that he was forced to resign because of the intolerable conditions which flowed from the illegal merger. The Court has reviewed the misrepresentation claims and concludes that they fall short of supporting any cause of action for fraud.

The essential elements of fraud are: (1) a deliberate misstatement of fact, (2) made with the intent to deceive another person, (3) reasonably relied upon by the deceived person, (4) which reliance proximately and directly results in damage to that person.[5]

As to the statements regarding the future plans of two Liebman partners, and the dropping of a Liebman client, plaintiff's damages could not have been caused by his reliance on these

5. *See:* Isen v. Calvert Corp., 126 U.S.App. D.C. 349, 379 F.2d 126 (1967); United States v. Kiefer, 97 U.S.App.D.C. 101, 228 F.2d 448 (1955), cert. denied, 350 U.S. 933, 76 S.Ct. 305, 100 L.Ed. 815 (1956); Hooker v. Midland Steel Co., 215 Ill. 444, 74 N.E. 445 (1905); Crocker v. Manley, 164 Ill. 282, 45 N.E. 577 (1896). *See also* 12 Williston Contracts § 1487 (3d ed. 1970).

statements because he left the firm only a few months after the merger, without giving sufficient time to ascertain whether the promised events would occur. Also, as a general rule, a misrepresentation as to future events will not constitute fraud unless the person making the statement has definite knowledge that those events will not occur.[6] It is also quite apparent from plaintiff's affidavit that the other representations about the Liebman firm were not a factor in plaintiff's resignation, because the main reason for his departure was his perceived loss of stature within the firm. These representations are therefore immaterial.

The key misrepresentation which forms the basis of plaintiff's complaint is that no Sidley partner would be worse off as a result of the merger. Plaintiff interpreted this to mean that he would continue to serve as the sole chairman of the Washington Office and that he would wield the commanding authority regarding such matters as expanding office space. It was the change in plaintiff's status at the Washington Office which directly precipitated his resignation.

This misrepresentation regarding plaintiff's status cannot support a cause of action for fraud, however, because plaintiff was not deprived of any *legal* right as a result of his reliance on this statement. The 1970 S&A Partnership Agreement,[7] to which plaintiff was a party, sets forth in some detail the relationships among the partners and the structure of the firm. No mention is made of the Washington Office or plaintiff's status therein, whereas special arrangements are specified for certain other partners. If chairmanship of the Washington Office was of the importance now claimed, the absence of such a provision from the partnership agreement requires a measured explanation which Mr. Day does not supply. Plaintiff's allegations of an unwritten understanding cannot now be heard to contravene the provisions of the Partnership Agreement which seemingly embodied the complete intentions of the parties as to the manner in which the firm was to be operated and managed.

Nor can plaintiff have reasonably believed that no changes would be made in the Washington Office since the S&A Agreement gave complete authority to the executive committee to decide questions of firm policy,[8] which would clearly include establishment of committees and the appointment of members and chairpersons. Having read and signed the

---

6. *See*: Hayes v. Disque, 401 Ill. 479, 82 N.E.2d 350 (1948); Brodsky v. Frank, 342 Ill. 110, 173 N.E. 775 (1930); Miller v. Sutliff, 241 Ill. 521, 89 N.E. 651 (1909); Parker v. Arthur Murray, Inc., 10 Ill.App. 3d 1000, 295 N.E.2d 487, 490 (1973).

7. The Sidley & Austin Partnership Agreement dated April 24, 1970 was the governing contract in effect at the time the merger was negotiated and approved, and the validity of the merger procedure should be evaluated in light of this agreement. An amended agreement which took into account the needs of the larger merged firm, was executed on October 16, 1972, in conjunction with a Memorandum of Understanding detailing the terms of the merger.

8. Both the 1970 and 1972 S&A Partnership Agreements contained the following language:
1. All questions of Firm policy, including determination of salaries, expense, Partners' participation, required balances of Partners, investment of funds, designation of Counsel, and the admission and severance of Partners, shall be decided by an Executive Committee . . . provided, however, that the determination of participation, admission and severance of Partners, shall require the approval of Partners (whether or not members of the Executive Committee) then holding a majority of all voting Percentages. The Committee shall advise and consult with other Partners to such an extent as the Committee may deem advisable and in the best interest of the Firm.

Any amendment of this Agreement or any subsequent agreement, if signed or initialed by Partners then holding a majority of all voting Percentages, shall be as effective as though signed or initialed by all Partners; provided, however, that any agreement providing for the incorporation of the Firm shall be signed by Partners then holding seventy-five percent (75%) of all voting Percentages.
. . .

1970 and 1972 S&A Partnership Agreements which implicitly authorized the Executive Committee to create, control or eliminate firm committees, plaintiff could not have reasonably believed that the status of the Washington Office Committee was inviolate and beyond the scope and operation of the Partnership Agreements. Thus, since plaintiff had no right to remain chairman of the Washington Office, a misrepresentation regarding his chairmanship does not form the basis for a cause of action in fraud.

### Breach of Contract, Conspiracy and Wrongful Dissolution or Ouster of Partner

As shown above, plaintiff had no contractual right to maintain his authority over the Washington Office, and therefore he has not made out a case for breach of contract. Since he did not have a legal right to maintain his status in the firm, the conspiracy charge[9] amounts to no more than an internal power sweep, executed and permitted under the provisions of the partnership agreement for which there is no legal remedy.

■  Similarly, there was no wrongful dissolution or ouster of plaintiff from the partnership because the merger of the two firms was authorized under the terms of the S&A partnership agree-

ment. By the terms of the agreement, the executive committee was entrusted with "all questions of Firm policy."[10] Additionally, partners could be admitted and severed from the firm and the partnership agreement could be amended by majority approval by the partners.[11] The merger of S&A with the Liebman firm could be considered either as the admission of new partners or the making of a new or amended agreement, and thus majority approval was all that was required, and a post facto change in plaintiff's vote would be of no effect.

■  Plaintiff contends that the merger was such a fundamental change in the nature of the partnership that unanimous approval was required and that had he known the personal consequences of the merger, he would have exercised a "veto" and the events which forced him to resign would not have occurred. This theory, however, runs counter to the prevailing law of partnership. Generally, common law and statutory standards concerning relationships between partners can be overridden by an agreement reached by the parties themselves.[12] The Uniform Partnership Act (adopted both in Illinois and the District of Columbia)[13] specifically provides that statutory rules governing the rights and duties of the partners are "subject to any agreement between them."[14]

---

9. Plaintiff charged in his original complaint that defendants had conspired to change the basic nature of the firm by presenting a far-advanced merger arrangement and to downgrade plaintiff's status at the Washington Office, thus forcing plaintiff to resign. See plaintiff's complaint Count IV, ¶¶ 47–53.

10. See note 8, supra. Management by an executive committee elected by a majority of the partners is a legally acceptable contractual arrangement. See: Morrison v. Ultican, 35 Wash.2d 504, 213 P.2d 617 (1950); Bernstein, Bernstein, Wile & Gordon v. Ross, 22 Mich.App. 117, 177 N.W.2d 193 (1970).

11. See note 8, supra.

12. See H. Crane and A. Bromberg, Law of Partnership § 5, at 43 (1968).

13. See Am.Jur.2d Desk Book, Doc. 129 (1974 Supp.).

14. See D.C.Code § 41–317 (1973) and Ill. Rev.Stat.1973, ch. 106½, § 18. Two of the rules which are thus "subject to agreement" are:

(e) All partners have equal rights in the management and conduct of the partnership business.

\*     \*     \*     \*     \*

(g) No person can become a member of a partnership without the consent of all the partners. Id.

See also Holman v. Coie, 11 Wash.App. 195, 522 P.2d 515 (1974), where a court upheld the expulsion of two partners by majority vote without any form of notice or hearing on the ground that the partnership agreement expressly provided for such summary procedure.

Nor do the cases cited by plaintiff support the proposition that unanimous consent is needed for the merger of partnerships. In McCallum v. Asbury, 238 Or. 257, 393 P.2d 774 (1964), a partner sued to dissolve a partnership of medical doctors. Plaintiff challenged the amendment of the agreement by majority vote which provided for management by an executive committee. The court held that a majority could approve this change, even though the agreement provided that all partners were to have an equal share in management. Likewise, Fortugno v. Hudson Manure Co., 51 N.J. Super. 482, 144 A.2d 207 (1958), affords little support.

*Fortugno* basically held that a partner could not be effectively changed into a stockholder in a corporation without his consent. In that case, there had been no prior contract that the partnership agreement could be amended by majority vote. The S&A Agreement, however, dealt specifically with incorporation of the firm, providing that incorporation would be effective if approved by three-fourths of the partners. Merger was a less dramatic change than incorporation, which would have eliminated the partnership entity. It cannot reasonably be argued, therefore, that the merger fell outside the purview of the Agreement, requiring unanimous consent for its approval. Amendments to the Agreement and admission of partners required only majority approval, and plaintiff's proposed "veto power" is nothing more than an expressed hope, incompatible with and contrary to the overall scheme and provisions of the S&A Agreement.

### Breach of Fiduciary Duty

Plaintiff also alleges that defendants breached their fiduciary duty by beginning negotiations on a merger with the Liebman firm without consulting the other partners who were not on the Executive Committee and by not revealing information regarding changes that would occur as a result of the merger, such as the co-chairmen arrangement for the Washington office. An examination of the case law on a partner's fiduciary duties, however, reveals that courts have been primarily concerned with partners who make secret profits at the expense of the partnership.[15] Partners have a duty to make a full and fair disclosure to other partners of all information which may be of value to the partnership. 1 Rowley on Partnership § 20.2, at 512–13 (2d ed. 1960). The essence of a breach of fiduciary duty between partners is that one partner has advantaged himself at the expense of the firm. *Id.* The basic fiduciary duties are: 1) a partner must account for any profit acquired in a manner injurious to the interests of the partnership, such as commissions or purchases on the sale of partnership property; 2) a partner cannot without the consent of the other partners, acquire for himself a partnership asset, nor may he divert to his own use a partnership opportunity; and 3) he must not compete with the partnership within the scope of the business. *See* Crane & Bromberg, Law of Partnership, § 68, at 389–91 (1968).

A typical case of breach of fiduciary duty and fraud between partners cited by plaintiff is Bakalis v. Bressler, 1 Ill.2d 72, 115 N.E.2d 323 (1953). There, a defendant partner had surreptitiously purchased the building which housed the partnership's business and was collecting rents from the partnership for his own profit. What plaintiff is alleging in the instant case, however, concerns failure to reveal information regarding changes in the internal structure of the firm. No court has recognized a fiduciary duty to disclose this type of information, the concealment of which does not produce any profit for the offending partners nor any finan-

15. *See*: J. Crane & A. Bromberg, Law of Partnership § 68 (1968); 1 Rowley on Partnership §§ 20.0–20.2 and § 21.1 (2d ed. 1960).

cial loss for the partnership as a whole. Not only was there no financial gain for defendants, but the remaining partners did not acquire any more power within the firm as the result of the alleged withholding of information from plaintiff. They were already members of the executive committee and as such had wide-ranging authority with regard to firm management. Thus plaintiff's claim of breach of fiduciary duty must fail.

What this Court perceives from Mr. Day's pleadings and affidavits is that he may be suffering from a bruised ego but that the facts fail to establish a legal cause of action. As an able and experienced attorney, it should have been clear that the differences and misunderstandings which developed with his former partners were business risks of the sort which cannot be resolved by judicial proceedings. Mr. Day, a knowledgeable, sophisticated and experienced businessman and a responsible member of a large law firm, bound himself to a well-defined contractual arrangement when he executed the 1970 [16] Partnership Agreement. The contract clearly provided for management authority in the executive committee and for majority approval of the merger with the Liebman firm. Even if plaintiff had voted against the merger, he could not have stopped it. Furthermore, the Partnership Agreement, to which he freely consented denies the existence of a contractual right to any particular status within the firm for plaintiff. If plaintiff's partners did indeed combine against him, it is clear that their alleged activities did not amount to illegality, and that any personal humiliation or injury was a risk that he assumed when he joined with others in the partnership.

Accordingly it is this 29th of May, 1975

Ordered that defendants' motion for summary judgment is granted and the complaint in this proceeding is dismissed with prejudice.