(No. 32533.—▮▮▮▮▮▮)

MICHAEL BAKALIS, Appellee, *vs.* LOUIS S. BRESSLER *et al.*, Appellants.

*Opinion filed September 24, 1953—Rehearing denied Nov. 16, 1953.*

Leon M. Despres, of Chicago, (Samuel D. Golden, of counsel,) for appellants.

Werner W. Schroeder, and John D. Vosnos, both of Chicago, for appellee.

Mr. Justice Hershey delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook County impressing real estate in the city of Chicago, upon which is located a wholesale bakery building, with a constructive trust in favor of plaintiff and against defendants. The appeal was brought directly to this court because a freehold is involved.

At various times before 1938, Michael Bakalis, the plaintiff, and Louis Bressler, defendant, had worked for Midland Bakeries, which owned the Boysen Baking Company, at 1001 West Chicago Avenue, Chicago. In 1938 Midland contacted Bakalis and asked him to take over the Boysen Baking Company, in which Midland had not prospered. Bakalis contacted Bressler. As a result a corporation was organized in July, 1938, under the name of Boysen

Baking Company. Two hundred fifty shares of the stock were issued to plaintiff, the same number to Bressler and a like number to Midland. Midland also received an additional $25,000 of par value preferred stock. Midland leased the building in question to Boysen Baking Company for a term ending July 31, 1948, at a rental of $750 a month, plus 10 per cent of the profits. The new corporation employed Bressler as general manager and Bakalis as sales manager. In 1943, at Bressler's suggestion, the corporation was dissolved in order to save taxes and Bressler and Bakalis formed a partnership in which each had an equal interest. A $25,400 note, which the corporation had given to Midland upon its surrendering its preferred stock, was assumed by the partnership. The lease upon the building was assigned to the partnership, the term was extended to July 31, 1958, with certain modifications, and the due date of the note was extended to August 1, 1958. Midland's monthly percentage rental was increased to 25 per cent of the net operating profit.

The partnership agreement entered into between Bakalis and Bressler provided for the doing of a general baking business, both wholesale and retail, under the name Boysen Baking Company, each partner having a half interest. It was provided in the agreement that neither partner should "engage in any unusual transaction, or use the firm's name, credit or property for other than partnership purposes, * * * or knowingly do any act by which the interests of the partnership shall be imperiled or prejudiced." The agreement further provided that Bressler should be the general manager and Bakalis the sales manager.

The business prospered, and on June 27, 1946, the partnership paid $5400 on the note, leaving an unpaid balance of $20,000, which, however, was not due for 12 years. In October, 1946, Bressler pursuaded Bakalis to agree to the payment of the $20,000 note immediately, saying that the partnership had sufficient funds to pay the note and

they would thereby save the interest. · One of Bressler's arguments which pursuaded Bakalis to agree to the payment of the note was that if this were paid Midland might be disposed to sell the property to the partnership because it was the last asset Midland had in relation to the baking business. After Bressler had paid the note with partnership funds plaintiff asserts he told him that Midland did not want to sell the building. It was almost a year later that plaintiff discovered Bressler had purchased the building for himself and had immediately deeded it to his wife, Cecil Isles Bressler, who is joined here as a defendant, the transfer being made to her as a gift, so he says. The record discloses that Bressler would not pay the $20,000 note until he received from Midland a signed contract for the purchase of the building and not until and only then was the check of the partnership in payment of said note delivered to the attorney for Midland. There is nothing in the record to indicate that the plaintiff knew anything about the foregoing, as all the exhibits in reference to said building were addressed to Bressler individually and not to the partnership. In making out the rent checks every month after he purchased the building, Bressler made them payable to "Boysen Building Account." Plaintiff claims that in September, 1947, he first noticed one of these checks, inquired what it was for, and was informed that it was a rental payment to the Bresslers who now owned the building. Plaintiff then confronted Bressler with the check, who then said he had Bakalis where he wanted him and nothing could be done about it.

Bressler denied these assertions by plaintiff and testified that after he purchased the building Bakalis had, by checks signed by him, made payment of the rent. An examination of the checks of the partnership proved this not to be true. He further testified that he had told the plaintiff he was · making the deal for himself and would trade his Midland stock in on it, and, further, that a week after the purchase

he informed plaintiff that he bought the property for himself. Bressler, however, offered no other evidence to support his denial and assertion. The plaintiff, however, is corroborated by William Engle, the company bookkeeper, as to his assertion that he noticed the rent check on the bookkeeper's desk made out to the Boysen Building Account and was informed by the bookkeeper that Bressler had purchased the building. This testimony of William Engle further discloses that immediately on receiving such information plaintiff went to talk to Bressler, as he, himself, testified.

On January 27, 1948, plaintiff filed this suit against Bressler and his wife. In his complaint he asked that the defendants be adjudged to be constructive or implied trustees of the property, to the extent of 50 per cent thereof, for and on behalf of plaintiff, or that they be held to be constructive or implied trustees of the entire property for and on behalf of the copartnership; that defendants convey to plaintiff a one-half interest in the property, or that they convey to the partnership the entire property; that defendants be required to account for the rents, profits and emoluments of the property during their purported assumption of the sole and exclusive ownership thereof; and that an injunction issue restraining the defendants from transferring or encumbering the property, from employing partnership funds for the improvement of the property; from attempting to terminate the partnership leasehold in the property; from attempting to interfere with the occupancy of the property by the partnership; and from instituting any legal or equitable proceedings, or using any other improper or illegal methods, for the termination of the copartnership business.

In his answer Louis S. Bressler admitted that he purchased the property in question on November 2, 1946, denied any wrongdoing, denied that the purchase was made in disregard of any fiduciary obligation, denied that he

breached article VI of his copartnership agreement, denied that plaintiff has any interest, legal or equitable, in the property in question, and denied that it was conveyed by Louis S. Bressler to Cecil Isles Bressler for the purpose of depriving plaintiff of an interest therein.

Defendants contend that Bressler acted wholly within his rights in purchasing the fee of the real estate involved in this case and that the fiduciary relationship existing between the partners extended only to the enterprise in which the partners are mutually engaged. They assert the relationship does not prevent one of the partners from buying the building in which the partnership is doing business, with his own funds and for his own investment purposes, where the partnership has only a lease on the building, expiring in a few years. They also contend that the court will not declare the existence of a constructive trust unless the proof is clear, convincing, unequivocal and unmistakable. Defendants also urge that the chancellor should place reliance on the findings of fact of the master in chancery in a contested case. Plaintiff, on the other hand, takes the position that the fiduciary relationship existing between him and his partner extended not only to the business in which they were engaged, but also to any other matter or thing which influenced or affected that business, and that in this case especially, the fiduciary relationship extended to all dealings connected with the building in which they operated their bakery. The reason he assigned in support of this position was that the partners recognized the desirability of eventually acquiring this building as an asset of their business or partnership, and had on several occasions discussed between themselves the matter of acquiring the building. The lease itself provides that on the termination of the lease by the lessor for any breach thereof, or upon the failure of the lessee to renew said lease at the expiration of 10 years from the date thereof, (it had already been renewed and there was no provision for a subsequent re-

newal,) "the lessor shall have the right to the good will of the business of lessee conducted by it on said premises, with the names and addresses of its customers, and the right to contact such customers for the purchase and sale of bakery products of all kinds." Plaintiff also relies upon the fact that the partnership agreement between them stipulated that neither partner should "engage in any unusual transaction, or use the firm's name, credit or property for other than partnership purposes, * * * or knowingly do any act by which the interests of the partnership shall be imperiled or prejudiced."

It is obvious from the correspondence between Bressler and Midland, and other documents in the record, that one of the conditions of the sale of the building to Bressler was the payment of the $20,000 partnership note 12 years before it was due. Each of the partners occupied a fiduciary relation to the other, and each was therefore bound to the utmost good faith in all dealings and transactions that affected the other in the partnership business. Since Bressler was the managing partner the duty rested more heavily on him. (*Meinhard v. Salmon,* 249 N.Y. 458.) The acquisition of this building by Bressler had the effect of making him the partnership's landlord. When the partnership lease expired Bressler could refuse to renew it. If he did refuse to renew it, or if he revoked the lease before its expiration on account of some breach by the lessee, Bressler immediately acquired the entire good will of the partnership business, because the lease so provided. As the owner of the building Bressler not only became the partnership's lessor but he received the $750 monthly rental which he and his partner had been paying for the building, and he also got 25 per cent of the profits of the business, as provided in the lease, thereby changing the partnership division of the profits from 50-50 to 62½-37½. Bressler's interest, therefore, in the acquisition of the building, if he acquired same without the knowledge of his partner, was in sharp

and irreconcilable conflict with his fiduciary duty as a partner. There is no doubt that in this case Bressler was under obligation to advise his partner fully of negotiations he contemplated and carried on with Midland concerning the purchase of the building. If Bakalis wanted to join with him in the purchase he was entitled to do so. There is evidence in the record that Bressler deliberately concealed these negotiations from Bakalis. In *Ditis* v. *Ahlvin Construction Co.* 408 Ill. 416, we said: "The fiduciary relationship between coadventurers ordinarily precludes one of them from purchasing or leasing property relating to the enterprise, either for himself or another, in the absence of full disclosure to his associates."

The fiduciary position occupied by Bressler cast upon him the burden of showing in this suit that his dealings were consistent with the highest standard of loyalty. The fiduciary relationship embraces all matters reasonably relating to the partnership business. The defendant owed a duty not to deal secretly on his own account for the real estate necessary to the operation and good will of the partnership business. The fiduciary relation prohibits all forms of trickery, secret dealings and preference of self in matters relating to and connected with a partnership and joint venture. (*Seligson* v. *Weiss,* 227 N.Y.S. 338; *Dike* v. *Martin,* 85 Okla. 103.) Defendants admit that a fiduciary relationship existed between defendant Bressler and Bakalis, but they argue that it is a narrow one. They say that it included the "bakery business" but not the real estate which was necessary to the operation of the business. Defendants cannot divorce the real estate from the partnership business and thus remove it from the protection of the fiduciary relationship. As was said in the case of *Meinhard* v. *Salmon* (one of the landmarks in this branch of the law,) the "continuance of business" is the "chief element of value" in the good will of a business. Here the lease causes the good will to go to the lessor at the end of

the term, as the renewed lease did not give the partners the option to again renew. While defendant vehemently denies any intention on his part to reap a secret individual benefit contrary to the best interests of his partner, and asserts that he adequately informed Bakalis of his purchase, he is uncorroborated by any fact. The record gives rise to inferences quite the contrary. Upon purchase of the building with his funds Bressler immediately transferred the title to his wife indicating an intention to secrete the fact of his purchase. Moreover, the checks for rental, drawn by him, were made payable to the "Boysen Building Account," further indicating an arrangement to conceal his identity as purchaser of the building. To deal secretly with such an element and reap an individual advantage at the expense of the partnership is a clear violation of one partner's fiduciary duty to the other.

Defendants rely heavily on the *Thanos case*, (*Thanos v. Thanos*, 313 Ill. 499,) decided in this court in 1924. In that case we held that unless the proof is clear, convincing, unequivocal and unmistakable the court will not declare the existence of a constructive trust, and defendants argue that in this case plaintiff's proof is not of that clear, convincing, unequivocal and unmistakable character. The *Thanos case* is not in point here. What the plaintiff really sought in that case was a holding that a resulting trust existed in his favor. His contention was that property had been acquired with partnership funds for partnership purposes and that therefore a resulting trust in the property vested in the partnership. He did not sustain this allegation by proof. Nor was there any basis for holding that a constructive trust existed, because both plaintiff and defendant testified that the defendant offered several times to transfer to the plaintiff a half interest in the property if he would pay his half, and that the plaintiff refused. The master in chancery before whom the evidence in this case was taken evidently

failed to apply the proper rules of law. He found that the plaintiff had not established his case by clear, convincing, unequivocal and unmistakable evidence, whereas the burden of proof was in fact upon the defendant, because of the fiduciary relationship, to show by clear, convincing, unequivocal and unmistakable evidence that he had been completely frank and honest with his partner, had made full disclosure, and had not dealt secretly behind his back. (*Kester* v. *Crilly,* 405 Ill. 425.) In sustaining exceptions to the master's report the chancellor found that Bressler had made the purchase without a full disclosure and thus violated his fiduciary duty to his partner. In *Selwyn* v. *Waller,* 212 N.Y. 507, a case remarkably similar to the case at bar, the court said: "The very fact that one [partner] conceals his true interest from the other indicates a purpose to gain some advantage at the other's expense." That case condemned secret and questionable deals by a partner for his own benefit.

The following excerpt from the opinion of Mr. Justice Cardozo in the *Meinhard case* is very pertinent here. He said "Joint adventurers, like co-partners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by the fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. *Wendt* v. *Fischer,* 243 N.Y. 439, 444, 154 N.E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It

will not consciously be lowered by any judgment of this court."

In numerous cases we have adhered to the same principle as is announced in the *Meinhard case.* (Cf. *Dixmoor Golf Club, Inc.* v. *Evans,* 325 Ill. 612; *Farwell* v. *Pyle-National Electric Headlight Co.* 289 Ill. 157; *Winger* v. *Chicago City Bank and Trust Co.* 394 Ill. 94.) No conflict exists between the legal principles enunciated in this case and those in the case of *Glasser* v. *Essaness Theatres Corp.* 414 Ill. 180. Different determinations are reached in the two cases because of an extreme difference in facts and the evidence presented.

It is clear that the fiduciary relationship of the partners extended to the purchase of the building in question, and that the defendant Bressler wholly failed to establish by clear and convincing evidence that the transaction was not fraudulent as to the partnership.

The parties have agreed in this court that defendants should be allowed credit for all proper expenses of building operation, such as necessary repairs and replacements.

The decree of the circuit court of Cook County that defendant Cecil Isles Bressler shall transfer the title to the premises to Louis S. Bressler and Michael Bakalis as tenants in common, that said partners shall assume the mortgage thereon, that Michael Bakalis shall pay to defendants one half of the payment made by defendant, Louis S. Bressler, at the time of acquisition of the property, and that defendants shall account to Michael Bakalis for his one-half of the rentals arising and collected since November 2, 1946, *etc.,* is therefore affirmed.

*Decree affirmed.*