PAMELA HARRISON, Plaintiff-Appellant and Cross-Appellee, v. SEARS, ROEBUCK & COMPANY *et al.*, Defendants-Appellees and Cross-Appellants.

Fourth District No. 4—89—0031

Opinion filed October 5, 1989.

Kenneth E. Baughman and L. Keith Hays, both of Monticello, for appellant.

Arnstein & Lehr, of Chicago (Arthur L. Klein, Adele Rapport, and C. Vincent Maloney, of counsel), for appellees.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Sears, Roebuck and Company (Sears) discharged plaintiff Pamela Harrison due to an incident involving misuse of the employee discount privilege. Plaintiff sued Sears and Bruce Stark, defendants, alleging wrongful discharge, breach of implied covenant of good faith and fair dealing, breach of a right to fair procedure prior to termination, and for mental suffering caused by the reckless breach of her employment contract. Additionally, she sued defendants for libel. The two causes were combined in the trial court. Defendants filed a petition for sanctions pursuant to section 2—611 of the Code of Civil

Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). The trial court granted defendants' summary judgment on the contract and libel claims. It denied sanctions pursuant to section 2—611 of the Code.

Plaintiff appeals arguing the trial court erred in granting summary judgment on her breach of contract claims, her breach of implied covenant of good faith and fair dealing claim, her right to fair procedure claim, her claim for mental suffering, and her libel claims. Defendants cross-appeal arguing the trial court abused its discretion in denying their motion for sanctions.

We affirm.

FACTS

Plaintiff began working at Sears' Danville store on October 8, 1974. Prior to being hired, she completed a standard employment application. Plaintiff's employment was terminated on January 13, 1986, as the result of an alleged abuse of the employee discount policy occurring on January 8, 1986. In all counts of her second-amended complaint, plaintiff alleged that in exchange for employment, she agreed to abide by the rules of her employer. Therefore, she concluded the rules and regulations of Sears were incorporated into her written employment contract. Plaintiff also alleged she was discharged for "mistakenly" applying an employee discount to a customer's purchase.

In count I, plaintiff alleged that Sears breached its express employment contract by failing to follow remedial procedures set forth in its rules. In count II, plaintiff alleged Sears' actions, as stated in count I, breached its express contract with plaintiff. Plaintiff further alleged that as a result of the adoption of the rules and regulations and plaintiff's loyal services to defendant, defendant owed her an implied duty of good faith and fair dealing. Plaintiff asserted defendant violated this duty by arbitrarily and capriciously discharging her to reduce its payroll costs, without granting her the rights allowed under the rules. In count III, plaintiff alleged Sears discharged her and violated her implied right of fair procedure. Plaintiff asserted Sears should have afforded her a fundamentally fair opportunity to respond to the charges against her prior to dismissal. In count IV, plaintiff realleged the breach of contract alleged in count I. Plaintiff alleged the reasons stated for the discharge were a wilful violation of the discount privilege, theft, and that plaintiff was guilty of wilful misconduct and dishonesty. The reasons were communicated to plaintiff and her fellow employees in reckless and wanton disregard for plain-

tiff's mental well-being. Sears had reason to know its breach of contract would cause mental suffering, and plaintiff sustained mental suffering. Therefore, plaintiff requested compensation for the mental suffering caused by the breach of the employment contract.

Plaintiff on appeal has abandoned count III of her libel complaint. In count I of the libel complaint, plaintiff alleged Sears libeled her by submitting her written statement, parts of the Personnel Policy and Procedural Manual (Manual), and an inaccurate employee discount statement to the Illinois Department of Labor in connection with a hearing on unemployment benefits. Plaintiff's benefits were denied. Plaintiff alleged Sears failed to investigate the accuracy of the charges, had no reasonable basis to believe they were true, the statements were made to annoy plaintiff, and Sears deliberately failed to verify the charge. In count II of the libel complaint, plaintiff alleged Stark, the security manager at the Danville store, induced or tricked plaintiff into signing a statement, which contained an admission of theft. Stark communicated the "untrue statement" to his supervisor. In count IV of the libel complaint, plaintiff alleged Sears was responsible for Stark's actions.

In her deposition, plaintiff stated that on January 8, 1986, the store was having a 50% off sale. Darlene Beasley, formerly plaintiff's sister-in-law, and her son were staying with plaintiff for a week on a temporary basis. Beasley selected merchandise and purchased the merchandise in the hardware department, where plaintiff and Terri Wiese worked. Plaintiff had two items at the hardware checkout with her which she wanted to buy. However, she did not wish to write another check. Therefore, Beasley was going to purchase the items for plaintiff. Plaintiff told Beasley to bring her items to hardware, and she would ring up the purchase.

Plaintiff stated Wiese offered to ring the sale so plaintiff could get her discount. While Wiese was ringing the sale, a customer interrupted. Wiese told plaintiff to finish ringing the sale. While plaintiff was completing the transaction, she noticed Wiese had made an error in calculating the markdown. Therefore, plaintiff voided Wiese's sale. Plaintiff further stated that "without thinking" she entered her own employee identification number in the register, rerang the items, and gave Beasley an employee discount on the entire purchase. Plaintiff gave Beasley one copy of the receipt and signed the other copy. After Beasley left the store, plaintiff realized she rang her own sale. She knew she was wrong in ringing up her own sale. Plaintiff stated Stark asked her to come to the office and discuss the matter, had her write out a statement about what happened, and accused her

of giving Beasley an unauthorized employee discount. Plaintiff admitted giving Beasley the discount but told Stark it was a mistake.

Plaintiff further stated that she knew she could not ring her own discount purchase and she alone was supposed to get a discount. Beasley should not have received a discount on the items she purchased. Plaintiff's items were intermingled with Beasley's items and because she was rushed she entered her employee number and completed the transaction.

The applicable discount policy was printed on plaintiff's check stubs. It stated:

"The employee whose signature appears below is entitled to the regular employee discount in any store of this company on purchases for his/her personal use or for the use of members of his/her immediate family living with or supported by him/her."

Plaintiff stated she had not received a pamphlet (Getting Acquainted With Sears) explaining the discount policy. No one explained the discount policy to her, and she never read the discount policy statement on her check stub. She thought anyone living in her immediate household was eligible for her discount, including visitors. However, she knew Beasley was not entitled to the discount. On January 13, 1986, plaintiff told several employees at the store that she had been fired and explained why. Plaintiff stated she never saw the Manual while employed by Sears. After she was terminated, her attorney sent her copies of the rules and regulations stated in the Manual.

Plaintiff's supervisor, Harold Hobaugh, and Stark observed Wiese initiate the sale to Beasley. In his deposition, Stark stated he was in hardware chatting with Hobaugh. When he looked at Wiese, she was making a sale of several items of clothing to a woman. When he looked again, plaintiff was completing the sale Wiese had started. He observed plaintiff remove a ticket from the register, take money from the customer and sign one copy of the receipt. Sears had a duplicate receipt system. The only time one receipt is kept and signed is for an employee purchase. Stark did not recognize the customer as an employee and thought something might be wrong.

Stark and Hobaugh proceeded to the computer room to check the computer record of the sale. It showed plaintiff had given an employee discount on the sale. Therefore, Stark and Hobaugh went to the cash register and removed the retained receipt. Plaintiff had signed the receipt, which indicated she had given someone else her discount. Stark then talked with Wiese.

Subsequently, Stark asked plaintiff to discuss the incident. Stark said plaintiff stated the customer was formerly her sister-in-law, had moved in temporarily with plaintiff, and plaintiff gave her the discount. Plaintiff also stated she knew she was wrong. Stark asked plaintiff to make a written statement about what happened. He copied a form out of the security manual for her to use. Plaintiff told Stark one or two of the items were hers, and it was a mistake. Stark did not ask plaintiff if she had tried to contact management about correcting the mistake and was unable to reach Beasley to talk to her. Stark reported the incident to the personnel manager, Tom Mullins, and to the store manager, Richard Giacomo. A few days before the unemployment compensation hearing, Stark talked to a representative from Sears management. He had not heard the matter discussed by other employees in the Danville store.

Hobaugh's deposition statement regarding the incident supported Stark's deposition. Hobaugh discussed the incident with Giacomo and Mullins. He did not talk to anyone else about it.

Mullins, in his deposition, stated he and Giacomo recommended plaintiff be dismissed. The action was approved by the St. Louis office. Mullins discussed the incident with Hobaugh, Stark, Giacomo, and Cathy Parker, his assistant. He also discussed it with Carol Miller, who had witnessed plaintiff's interview with Stark. He told four employees they needed to be available for a deposition but did not discuss the facts of the incident with them. Mullins based his dismissal recommendation on the written statements, Stark and Hobaugh's observations, and the nature of the violation. He did not independently investigate the statement.

Giacomo discussed the incident with Stark, Hobaugh, and Mullins. He did not personally investigate the details or discuss them with plaintiff. He approved Mullins' recommendation based on the information he had. The cause of plaintiff's dismissal was generally known by the employees. He did not make an effort to keep it a secret.

ANALYSIS

Plaintiff asks this court to review the propriety of the trial court's ruling on defendants' motion for summary judgment. Summary judgment is properly granted if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Cronic v. Doud* (1988), 168 Ill. App. 3d 665, 523 N.E.2d 176; *Fuentes v. Lear Siegler, Inc.* (1988), 174 Ill. App. 3d

864, 529 N.E.2d 40.) The materials on file are interpreted most favorably toward the nonmovant. (*Crawford County State Bank v. Doss* (1988), 174 Ill. App. 3d 574, 528 N.E.2d 436.) The purpose of summary judgment is not to try issues of fact but to determine whether triable issues exist. The opponent need not prove his case upon a summary judgment motion. However, he must present some factual basis that would arguably entitle him to judgment. (*Fuentes*, 174 Ill. App. 3d 864, 529 N.E.2d 40.) Construing a contract is a matter of law suitable for summary judgment. *Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 523 N.E.2d 30.

BREACH OF CONTRACT

 Plaintiff in her pleadings and argument agrees that she is an at-will employee pursuant to an express employment contract. The parties rely on the employment application as forming the basis of the express contract. Under Illinois law, a written or oral employment contract which does not specify a term of employment creates an employment relationship which lasts at the will of the parties. (*Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 384 N.E.2d 91.) The employer or the employee may terminate the relationship at any time with or without cause and without incurring liability. (*Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 485 N.E.2d 312; *De Fosse v. Cherry Electrical Products Corp.* (1987), 156 Ill. App. 3d 1030, 510 N.E.2d 141.) This general rule is subject only to independent contract or statutory provisions and concepts of retaliatory discharge. (*Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314 (recognizing that parties may modify an at-will employment by an employee handbook or policy if contract-formation requirements are met); *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 128, 421 N.E.2d 876, 877 (recognizing the tort of retaliatory discharge).) An employment contract may specifically incorporate by reference the terms of a policy and procedural manual. *Piper v. Board of Trustees* (1981), 99 Ill. App. 3d 752, 755, 426 N.E.2d 262, 264 (notification of employment stated employment was " 'subject to the provisions of *** and to the bylaws, policies, rules and regulations of the Board of Trustees' ").

Plaintiff initially asks this court to construe her employment application as a contract and determine the Manual became a part of it. The contract states:

"In consideration of my employment, *I agree to conform to the rules and regulations of Sears, Roebuck & Co., and my employment and compensation can be terminated, with or with-*

*out cause, and with or without notice, at any time, at the op-
tion of either the Company or myself.* I understand that no
unit manager or representative of Sears, Roebuck & Co., other
than the president or vice-president of the Company, has any
authority to enter into any agreement for employment for any
specific period of time, or to make any agreement contrary to
the foregoing." (Emphasis added.)

■ Plaintiff's basic premise, that the language of the application
expressly incorporates the Manual, is not well-founded. The primary
objective of contract construction is to give effect to the intention of
the parties. This intention should be ascertained from the words used
in the contract. (*Srivastava*, 168 Ill. App. 3d 726, 523 N.E.2d 30.) A
contract's meaning must be determined from the words or language
used in the document. (*Johnstowne Centre Partnership v. Chin*
(1983), 99 Ill. 2d 284, 458 N.E.2d 480.) Where the terms in an agree-
ment are clear and unambiguous, they will be given their ordinary
and natural meaning. (*Reynolds v. Coleman* (1988), 173 Ill. App. 3d
585, 527 N.E.2d 897.) The entire agreement should be considered
(*Johnstowne*, 99 Ill. 2d 284, 458 N.E.2d 480; *Srivastava*, 168 Ill.
App. 3d 726, 523 N.E.2d 30), and a construction which is contrary to
the plain meaning of the words should be avoided (*Johnstowne*, 99
Ill. 2d 284, 458 N.E.2d 480). For a document to be incorporated by
reference, the contract must show an intent to incorporate the other
document and make it a part of the contract. *Golen v. Chamberlain
Manufacturing Corp.* (1985), 139 Ill. App. 3d 53, 487 N.E.2d 121.

■ In the instant case, plaintiff argues the phrase "I agree to
conform to the rules and regulations of Sears" constitutes an express
incorporation by reference of the Sears Manual. Initially, there is no
agreement by Sears to abide by the rules, only an agreement by
plaintiff to do so. Second, the application does not contain any lan-
guage indicating that it is "subject to" the provisions of the Manual.
In *Piper*, the case plaintiff relies upon, the notice of employment
specifically stated it was subject to the rules and regulations of the
Board.

Additionally, in *Weiner v. McGraw-Hill, Inc.* (1982), 57 N.Y.2d
458, 457 N.Y.S.2d 193, 443 N.E.2d 441, relied upon by plaintiff, the
application expressly stated it was subject to the policy manual.
Some expression of both parties' intent to be bound by the attached
document or the incorporated document is necessary. Mere reference
to the other document is not sufficient to incorporate it into the con-
tract. In the instant case, plaintiff admitted she did not know that
the Manual existed until after her termination. It was not available

to her when she worked at Sears. The managerial persons indicated that the Manual was a guide used by management which was not provided to the employees. Therefore, if one considers the circumstances of this case, the document could not have been incorporated by reference since it was not available to both parties, the reference to it was not clear and unequivocal, and the rules were only incorporated inasmuch as plaintiff agreed to abide by them. 17A C.J.S. *Contracts* §299, at 136-37 (1963).

Plaintiff's contention, therefore, that the language in the employment application expressly incorporated the rules and regulations set forth in the Manual into her employment contract is erroneous. The trial court did not err in granting summary judgment on this question.

■ However, even though the application does not expressly incorporate the Manual, statements found in an employee handbook and policy manual may create enforceable contract rights. (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.) In *Duldulao*, the court held that an employee handbook or policy statement creates enforceable contractual rights if the traditional requirements for contract formation are present. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe an offer had been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by continuing to work after learning of the policy statement. (See also *De Fosse*, 156 Ill. App. 3d 1030, 510 N.E.2d 141.) *Duldulao* did not involve a written employment contract.

In *Toussaint v. Blue Cross & Blue Shield* (1980), 408 Mich. 579, 292 N.W.2d 880, the court held an employee personnel manual could give rise to contractual rights without evidence the parties agreed that the policy would create employee rights, without knowledge of the details of the policy by the employee, and without the employee learning of the manual until after his hiring. The *Toussaint* court also specifically stated that an employer could preserve the at-will employment situation by having the employee expressly acknowledge that his employment was terminable at will.

■ In the instant case, neither the *Duldulao* or *Toussaint* line of cases can be said to apply. Plaintiff admits she did not know of the Manual prior to her termination, it was not disseminated to employees, and she did not rely upon it. We note *Toussaint* specifically stated that contracts such as the Sears contract would preserve the

traditional at-will employment relationship. Several courts, interpreting the Sears application in light of *Toussaint*, have held the employee handbook and manual did not modify the at-will statement in the application. (See *Reid v. Sears, Roebuck & Co.* (6th Cir. 1986), 790 F.2d 453; *Ringwelkski v. Sears, Roebuck & Co.* (E.D. Mich. 1985), 636 F. Supp. 519; *Batchelor v. Sears, Roebuck & Co.* (E.D. Mich. 1983), 574 F. Supp. 1480; *Summers v. Sears, Roebuck & Co.* (E.D. Mich. 1982), 549 F. Supp. 1157; *Novosel v. Sears, Roebuck & Co.* (E.D. Mich. 1980), 495 F. Supp. 344.) Cases involving similar statements in other employers' employment contracts reach the same result. See *Shelby v. Zayre Corp.* (Ala. 1985), 474 So. 2d 1069; *Holloway v. K-Mart Corp.* (1983), 113 Wis. 2d 143, 334 N.W.2d 570.

Plaintiff relies upon *Tiranno v. Sears, Roebuck & Co.* (1984), 99 A.D.2d 675, 472 N.Y.S.2d 49. In *Tiranno*, the plaintiff was discharged from a position as a parts manager for Sears. He argued Rule 2301(b) in the Manual restricted Sears' ability to terminate him. Plaintiff relies on the same provision. The *Tiranno* court looked at the rule, stated it could be interpreted as requiring just cause for termination, and held a triable issue of fact existed. The *Tiranno* court did not discuss the problem of incorporating the Manual into the contract, but assumed it was incorporated. The validity of the *Tiranno* decision has been questioned by other New York courts and by the Federal court. (*Murphy v. American Home Products Corp.* (1983), 58 N.Y.2d 293, 448 N.E.2d 86; *Wright v. Cayan* (2d Cir. 1987), 817 F.2d 999, 1005, *cert. denied* (1987), 484 U.S. 853, 98 L. Ed. 2d 112, 108 S. Ct. 157.) We also decline to follow the *Tiranno* case.

Although the agreement referred to the rules and regulations, it did not expressly incorporate them for all purposes. Neither the reasoning of *Duldulao* nor *Toussaint* applies to incorporate the rules and regulations. Therefore, the trial court correctly granted summary judgment to defendants on the breach of employment contract claim. Plaintiff's other contention, that disputed factual matters concerning lack of appropriate remedial procedures prior to termination of her employment precludes summary judgment, need not be addressed. An at-will employment may be terminated for any or no reason, with or without cause. Therefore, remedial measures were not required.

IMPLIED COVENANT OF GOOD FAITH

Plaintiff next argues the trial court erred in granting summary judgment to defendants on her breach of the implied covenant of good faith and fair dealing claim. Plaintiff argues this court should

hold as a matter of law that an independent contract and/or tort action for breach of an implied covenant of good faith and fair dealing exists in the employment at-will setting. Plaintiff acknowledges that no Illinois court has held that such an action exists in the employment contract setting; however, she notes that several courts have acknowledged the possible existence of the action in *dicta*. First, plaintiff asks this court to hold as a matter of law that a tort action, with punitive damages, is available based upon an expansion of the holding in *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 330 N.E.2d 540, *rev'd on other grounds* (1976), 64 Ill. 2d 338, 356 N.E.2d 75, and the dissenting opinions in *Foley v. Interactive Data Corp.* (1988), 47 Cal. 3d 654, 765 P.2d 373, 254 Cal. Rptr. 211.

In *Ledingham*, the Fifth District Appellate Court held that an insured and insurer in a health-insurance context have a duty to deal fairly with each other. The court noted that they must deal in good faith. The court found the failure to act in good faith by the insurer constituted a tort as well as a breach of contract. The court noted the special relationship which exists between an insured, who must contract for insurance and rely upon it, and the insurer. In *Disario v. Enesco Imports Corp.* (1987), 165 Ill. App. 3d 901, 520 N.E.2d 766, the First District Appellate Court held the employee did not have an independent action for tortious breach of the implied covenant of good faith and fair dealing. The court specifically declined to expand *Ledingham* to the employment at-will situation. (See also *Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 440 N.E.2d 998 (First District Appellate Court); *Foley*, 47 Cal. 3d 654, 765 P.2d 373, 254 Cal. Rptr. 211.) Under Illinois precedent, no action for tortious breach of an implied covenant of good faith and fair dealing exists in the employment at-will setting. We decline to expand Illinois law. Therefore, the trial court did not err in granting summary judgment. We need not address plaintiff's contentions that punitive damages are available in the tort action for breach of implied covenant of good faith and fair dealing and that the trial court erred in failing to allow her leave to amend count II to add details of wilful and wanton conduct.

■ However, plaintiff now asks this court to recognize an independent breach of contract action in the present situation. Implicit in every express contract in Illinois is the promise that the parties will act in good faith. (*Cuerton v. Abbott Laboratories, Inc.* (1982), 111 Ill. App. 3d 261, 443 N.E.2d 1069; *Stevenson v. ITT Harper, Inc.* (1977), 51 Ill. App. 3d 568, 366 N.E.2d 561.) There is apparently a

divergence of opinion in the appellate districts as to whether the duty creates or could create an action for breach of contract in an at-will employment setting. In *Powers v. Delnor Hospital* (1985), 135 Ill. App. 3d 317, 321-22, 481 N.E.2d 968, 972, *Hugo v. Tomaszewski* (1987), 155 Ill. App. 3d 906, 911, 508 N.E.2d 1139, 1142, and *Gordon v. Matthew Bender & Co.* (N.D. Ill. 1983), 562 F. Supp. 1286, 1289-90, the Second and Fifth District Appellate Courts and the Federal District Court held that the duty of good faith and fair dealing does not create an independent action for breach of contract in the employment at-will setting. The implied covenant is not interpreted as limiting the right of the employer to discharge an at-will employee. *Scott v. Sears, Roebuck & Co.* (7th Cir. 1986), 798 F. 2d 210.

In *Scott*, the court relied upon *Criscione*. In *Criscione*, the court affirmed the dismissal of plaintiff's complaint alleging wrongful discharge. Plaintiff did not allege a written employment contract, but alleged his discharge constituted a breach of the implied covenant of good faith. The court acknowledged that good faith was implied in every contract. It noted no factual allegations supported the plaintiff's claim and thus found plaintiff had not stated a cause of action for breach of contract. Plaintiff argued his dismissal for other than legitimate business reasons constituted a bad-faith breach of contract. The court in *dicta* expressed reservations about placing limitations on at-will employment. *Criscione*, 66 Ill. App. 3d at 669-70, 384 N.E.2d at 95.

In *Dykstra v. Crestwood Bank* (1983), 117 Ill. App. 3d 821, 825-26, 454 N.E.2d 51, 55, plaintiff alleged an oral contract of employment existed between him and defendant. Plaintiff further alleged the contract contained an implied covenant that defendant would act in good faith and only discharge plaintiff for good cause, which defendant breached. The appellate court noted plaintiff waived this argument. However, it stated the complaint was factually insufficient to state this cause of action. The First District Appellate Court noted its reluctance to place limitations on at-will employment relationships.

Therefore, the second district in *Powers*, fifth district in *Hugo*, and the Federal courts in *Scott* and *Gordon* state that breach of the implied covenant of good faith and fair dealing does *not* create an independent cause of action in the at-will setting. However, in view of *Disario* and *Dykstra*, the first district, although it has never recognized this action as sufficiently pleaded, apparently does accept that if sufficiently pleaded, it would state a cause of action.

The better reasoning appears to be that which holds no indepen-

dent breach of contract action exists for violation of this covenant in the employment at-will setting. The good-faith obligation in an express contract aids in defining and modifying the duties which grow out of the contract. It is a construction aid. (*Martin v. Federal Life Insurance Co.* (1982), 109 Ill. App. 3d 596, 440 N.E.2d 998.) Thus, the implied covenant furthers the agreement of the parties. No obligation should be implied which is inconsistent with the terms of the contract. An employment at-will contract gives the employer the right to terminate the employment at any time. Therefore, it is incongruous to imply a covenant which restricts that right. (See *Gordon*, 562 F. Supp. at 1289-90; *Murphy*, 58 N.Y.2d 293, 448 N.E.2d 86.) We conclude no . independent action sounding in contract for breach of an implied covenant of good faith and fair dealing exists in the employment at-will setting.

■ Plaintiff next argues that applying a covenant of good faith and fair dealing in some service contracts but not in an employment at-will contract violates equal protection. Plaintiff does not refer to any cases which support her theory. Therefore, this court need not consider the argument. Since plaintiff has not established that the court's use of the contract construction principles in her situation differs from the court's use of those principles in other similar situations, and that no rational reasoning exists for the disparate treatment, she has not shown an equal protection violation.

RIGHT OF FAIR PROCEDURE

■ Plaintiff next urges this court to reverse the trial court and recognize a new tort action in Illinois. In California and a few other States, the courts have recognized that under certain circumstances, resident physicians are entitled to fair procedure prior to their dismissal from the hospital residency program. The rationale for this rule is based upon the fact that certain organizations have the authority to end the pursuit of a medical or dental career. (*Ezekial v. Winkley* (1977), 20 Cal. 3d 267, 572 P.2d 32, 142 Cal. Rptr. 418; *Northeast Georgia Radiological Associates v. Tidwell* (5th Cir. 1982), 670 F.2d 507, 510-11 (and cases cited therein).) The right of fair procedure is analogous to the due process rights stated in *Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.

No case cited to us has expanded the right of fair procedure to a nonmedical employee. Additionally, plaintiff, who stated her employment was at will, could not have had a "property interest," which presupposes more than an expectancy in continued employment. This situation is not analogous to that of a professional person whose dis-

missal from a training program will effectively preclude the practice of his profession. Accordingly, we decline the opportunity to create a new tort action in Illinois. The trial court did not err in granting defendants' summary judgment on this issue.

MENTAL SUFFERING

Plaintiff next argues the unjustified accusation of dishonesty which breached her employment contract should give rise to damages for mental suffering. In *Petrowsky v. Family Service of Decatur, Inc.* (1987), 165 Ill. App. 3d 32, 518 N.E.2d 664, plaintiffs sought recovery for mental suffering caused by an adoption agency's mishandling of the adoption of the plaintiffs' child. The court noted that ordinarily damages for breach of contract do not include compensation for mental suffering. Exceptions exist where the breach was wanton or reckless and caused bodily harm and where defendant had reason to know when the contract was entered that its breach would result in mental suffering. The court agreed with plaintiffs' argument that due to the nature of the adoption proceedings, the parties are especially susceptible to emotional trauma. Therefore, the court held the agency must have been aware of this element and have anticipated that a breach of contract might cause mental suffering. See also *Maere v. Churchill* (1983), 116 Ill. App. 3d 939, 452 N.E.2d 694.

Plaintiff relies on *Petrowsky* and argues Sears should have been aware when it entered the employment contract that a breach of the contract would cause mental suffering. Generally, the proper measure of damages when an employee has been wrongfully discharged is the agreed wages during the contract term, reduced by the wages earned during the same period which could not have been earned in the same employment. (*Feldstein v. Guinan* (1986), 148 Ill. App. 3d 610, 499 N.E.2d 535.) Damages for mental suffering caused by breach of contract are ordinarily not recoverable. (*Valentine v. General American Credit, Inc.* (1984), 420 Mich. 256, 362 N.W.2d 628; *Maere*, 116 Ill. App. 3d 939, 452 N.E.2d 694.) The trial court correctly granted summary judgment on this issue.

LIBEL

Plaintiff next argues the trial court erred in granting defendant summary judgment on her libel claims. Essentially, plaintiff raises two arguments concerning libel. Plaintiff contends Sears communicated the form which she filled out, highlights of excerpts of the policy procedure manual, and a statement of reasons for her termination to the Illinois Department of Labor. She contends these

communications libeled her. She asserts the statements were false, accused her of theft, were transmitted without adequate investigation to determine her side of the story, and the validity of her contention that she could have made a cash register mistake should have been investigated. Second, plaintiff argues that the transmission of a written statement by Stark to his supervisor, Mullins, constituted libel.

Section 1900 of the Unemployment Insurance Act states in part:

"All letters, reports, communications, or any other matters, either oral or written, from an employer *** to the Director *** which shall have been written or made in connection with the requirements and administration of this Act *** *shall be absolutely privileged and shall not be made the subject matter or basis for any suit for slander or libel in any court of this State, unless the same be false in fact and malicious in intent.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 48, par. 640.

■■■ Considering the plain language of the statute, information provided by the employer is absolutely privileged unless it is false in fact and malicious in intent. Therefore, to overcome the privilege, plaintiff needed to establish falsity and malice. Plaintiff concedes on appeal that Stark's transmission of her statement form to Mullins was subject to a qualified privilege. The question then becomes whether the trial court erred in determining as a matter of law that plaintiff had not presented any evidence of falsity or malice which would present a factual dispute on the issue of abuse of the privilege. Since the same factors resolve both the libel claim against Sears for transmission of the materials to the Illinois Department of Labor and the libel claim against Stark and derivatively against Sears, they will be analyzed together.

■■■ ■ The elements of qualified privilege are (1) good faith by the defendant; (2) an interest or duty to be upheld; (3) a statement limited to that purpose; (4) a proper occasion; and (5) publication in a proper manner to proper parties. (*Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 349-50, 243 N.E.2d 217, 221.) The qualified privilege may be overcome by a showing of actual malice. Actual malice may be found where the person making the communication had reason to believe it was false and failed to investigate further. (*Zeinfeld*, 41 Ill. 2d 345, 243 N.E.2d 217; *Colson v. Stieg* (1980), 86 Ill. App. 3d 993, 408 N.E.2d 431; *Jones v. Britt Airways, Inc.* (N.D. Ill. 1985), 622 F. Supp. 389.) If the statement is libelous *per se*, malice may be imputed from the words themselves. (*Welch v. Chicago Tribune Co.* (1975), 34 Ill. App. 3d 1046, 1051, 340 N.E.2d 539, 543.) A false statement is libelous *per se* if it imputes to the plaintiff the

commission of a crime. (*Sivulich v. Howard Publications, Inc.* (1984), 126 Ill. App. 3d 129, 466 N.E.2d 1218.) However, the innocent construction rule applies in determining whether the statements or charge may impute a criminal offense. *Sivulich,* 126 Ill. App. 3d 129, 466 N.E.2d 1218.

The statement plaintiff completed stated:

"On this date Mr. *Stark* has discussed with me certain facts pertaining to theft, violation of Company policy, etc., as follows:

*Darlene Beasley came down stairs told me she had are* [sic] *items and had to go to the bank and she said there were a lot of people up stairs so I told her to bring the item down stairs when she came back and Terri would ring them up for me. Terri started to ring the item up and man ask her a question and she went to show him the[n] I Finish the sale for her I had a void and then without thinking I rang the sale in my number and give her my discount for the items I had.*

I wish to state at this time, I committed the above; I realized I was taking money and/or merchandise which was the rightful property of Sears, Roebuck & Co. and that I had no intention of returning the money and/or merchandise described above.

I have read this statement, the contents of which are true facts, that have been discussed with Mr. *Stark* and me on this date.

I have made this statement of my own free will. No threats or promises were made to me as an inducement to give this statement." (Italicized language reflects material plaintiff wrote in on form provided.)

In this court, plaintiff focuses only upon the typed paragraph beneath her handwritten (italicized) statement. She asks this court to disregard both her signature, which she claims was made under duress, and the handwritten portion of the statement. She contends she did not read the typed paragraph, and it was an accusation of theft by Stark and through him Sears. Plaintiff states, therefore, that the form is not her statement but Sears' statement.

Materials which are alleged to be libel *per se* must be read in context. If one reads the entire form, it is apparent that a violation of the discount policy was at issue. Plaintiff's own statement clarifies that theft was not at issue. The trial court made this finding in ruling on the summary judgment motion. Malice cannot, thus, be inferred from the statement. Plaintiff does not argue her handwritten

admission is false in fact.

Plaintiff focuses on a failure of Sears and Stark to investigate as evidence of malice. However, one need investigate only when one has reason to believe the materials are not true. In the instant case, a detailed investigation did occur, although Stark was unable to contact Beasley. Second, plaintiff relies on the Manual as showing what should have been done. She argues that the Manual's procedures demonstrate a failure to investigate. Since the Manual's procedures do not apply in this case, these steps should not be used as the basis of a finding of malice.

The trial court did not err in granting summary judgment on the libel claims. Plaintiff has not presented any evidence that her statement was false. Nor has she established malice on the part of Stark or Sears. Therefore, the communications are privileged.

CROSS-APPEAL

■■ Defendants filed a petition for sanctions pursuant to section 2—611 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). Defendants argue the trial court abused its discretion in denying the motion. Section 2—611 of the Code requires that an attorney sign pleadings and other papers filed with the court. The signature constitutes a certificate by him that he has read the document, has made a reasonable inquiry into its basis, believes it is well-grounded in fact, and warranted by the law or a good-faith argument for the extension of the existing law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611; *People v. King* (1988), 170 Ill. App. 3d 409, 524 N.E.2d 723.) The statute also precludes lawsuits brought for an improper purpose. (*Prevendar v. Thonn* (1988), 166 Ill. App. 3d 30, 518 N.E.2d 1374.) The section is intended to prevent counsel from making allegations not well-grounded in fact or law. (*Marathon Finance Co. v. Pioneer Bank & Trust Co.* (1988), 168 Ill. App. 3d 148, 153, 522 N.E.2d 248, 252.) After a review of the instant case, we cannot say the trial court abused its discretion in denying sanctions.

For the above reasons, we affirm the trial court.

Affirmed.

SPITZ and GREEN, JJ., concur.