962 F.2d 10
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Frank J. ROAN, Plaintiff-Appellant,
v.
KECK, MAHIN & CATE, an Illinois partnership, Defendant-Appellee.
 91-2637.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 19, 1992.
Decided May 18, 1992.
As Amended May 19, 1992.
Rehearing and Rehearing En Banc Denied June 15, 1992.
 
 Before BAUER, Chief Judge, CUMMINGS, Circuit Judge and VAN SICKLE, Senior District Judge*
 ORDER
 Frank J. Roan, now a citizen of Florida, filed this diversity complaint against Keck, Mahin & Cate, a large Chicago law firm with branches in nine other cities, claiming that he had been under-compensated during the years 1985 through 1988. During that period his average compensation was $227,000 annually and his average billings during the same time period were $2,589,000 per year.
 From the briefs and oral argument, we learned that plaintiff was the leading "rainmaker" at his former firm. Although the defendant so admits, it contends that plaintiff's compensation took into effect the fact that other lawyers did much of the work that he attracted to the firm.
 The district court referred this matter to Magistrate Judge Weisberg for a report. The magistrate judge concluded that defendant's motion to dismiss should be granted because "Roan received what he bargained for." Like the district judge, we are in complete agreement with the findings and conclusions of the magistrate judge whose report is attached as an appendix hereto. Therefore the district court's dismissal of Roan's complaint is affirmed.
 APPENDIX
 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 FRANK J. ROAN Plaintiff,
 vs.
 KECK, MAHIN & CATE, an Illinois partnership, Defendant.
 FILED UNDER SEAL
 No. 89 C 8624
 To Honorable Lindberg, Judge.
 
 
 1
 Report and Recommendation On Defendant's Motion to Dismiss
 
 
 2
 WEISBERG, United States Magistrate Judge.
 
 
 3
 Frank J. Roan was a capital partner in the Chicago law firm of Keck, Mahin & Cate (KMC) from 1983 to May 1989 when he retired to practice law in Florida. He has filed a three count complaint against KMC claiming that the firm and his former partners breached their fiduciary duties by approving grossly inadequate compensation for him for the years 1985 through 1988 and setting his compensation in violation of the partnership agreement. Roan is a Florida resident. KMC is an Illinois partnership with its main office in Chicago. Neither KMC nor any of its more than 140 partners is a citizen or resident of Florida and the firm has no offices in that state. More than $50,000 is in controversy and the court has diversity jurisdiction under 28 U.S.C. § 1332.
 
 
 4
 KMC has moved to dismiss under Fed.R.Civ.Proc. 12(b)(6), arguing that the complaint fails to state a claim under Illinois law, which the parties agree governs. We assume the allegations in the complaint to be true. Roan's complaint will stand unless it is clear that he can not recover under any state of facts that could be proved in support of his claims. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
 
 The Complaint
 
 5
 The complaint sets out Roan's billable hours, billings to clients and compensation for the years 1985 through 1988. p 11(a). Average billable hours, average billings, average compensation and annual compensation as a percentage of billings are also set forth for 26 capital partners, including Roan, for the same years. p 12. During those years Roan had the highest billings of the entire firm, but the lowest compensation as a percentage of billings when compared to each of his fellow capital partners. p 13(a). He also had the lowest average billable hours. p 12.
 
 
 6
 Paragraph 6(b) of the partnership agreement provides that recommendations on compensation are initially made to an elected management committee by a compensation committee which also makes recommendations to the management committee for partnership promotion, severance or other action. In making its recommendations, the compensation committee is to take into account, among other factors, the following:
 
 
 7
 --the quality of each lawyer's work;
 
 
 8
 --the initiative and responsibility displayed in handling Firm clients;
 
 
 9
 --the industry and application displayed;
 
 
 10
 --the lawyer's judgment and experience in the practice of law;
 
 
 11
 --the new business, if any, attracted and the profitability of his work to the Firm; and
 
 
 12
 --the client development and preservation and other significant contributions, if any, to the operation and success of the Firm.
 
 
 13
 p 8 (the Guidelines).
 
 
 14
 Under Par. 5(c) of the agreement the management committee makes such changes in the recommendations of the compensation committee as it deems proper. The recommendations of the management committee are final unless amended by a consensus at an annual capital partners meeting. If there is substantial disagreement among the capital partners, year-end distributions are determined by the management committee. p 7.
 
 
 15
 Count I charges that KMC and the partners breached their fiduciary duties to Roan by recommending and approving grossly inadequate compensation to Roan. p 17. Count II claims breach of contract, alleging that Roan's compensation for 1985 to 1988 was set without regard to the Guidelines in Par. 6(b) of the partnership agreement. p 20. Count III alleges breach of an implied covenant of good faith and fair dealing in the partnership agreement.
 
 Count I--Breach of Fiduciary Duty
 
 16
 All agree on general principles. Partners occupy a fiduciary relation to each other. Each is "bound to the utmost good faith in all dealings and transactions that affect the other in the partnership business.... The fiduciary relation prohibits all forms of trickery, secret dealings and preference of self in matters relating to and connected with a partnership and joint venture". Bakalis v. Bressler, 1 Ill.2d 72, 78-79, 115 N.E.2d 323, 326-27 (1953). A partner's duty is one of undivided loyalty; the court in Bakalis quoted Judge Cardozo's famous statement in Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 546 (1928), Bakalis, 1 Ill.2d at 85, 115 N.E.2d at 328. The duty bars concealment, deception or fraud. Kreutz v. Jacobs, 39 Ill.App.3d 515, 519, 349 N.E.2d 93, 95 (3d Dist.1976).
 
 
 17
 Roan maintains that in light of these cases he is on firm ground when he alleges in Count I that KMC and its partners breached their fiduciary duty to treat him fairly with respect to compensation by recommending and approving grossly inadequate compensation for him. Cplt. pp 16, 17.
 
 
 18
 Roan has not alleged concealment, deception or fraud. He has not alleged that any KMC partner personally acquired property in which the partnership had an interest or pocketed any fees that belonged to the partnership. His claim is that he and his partners had different views about his contribution to the partnership and that the views of his partners were not only mistaken but so arbitrary and inequitable that they breached their duty of fair dealing with respect to his compensation.
 
 
 19
 We think his theory is fundamentally flawed for several reasons. First, he has not cited any comparable case finding a fiduciary breach in such circumstances. Second, the determination of partners' compensation is covered in the partnership agreement which specifies procedures to be followed in determining compensation and who is authorized to make final decisions. Partners have broad authority to establish their duties and obligations by agreement. See Day v. Sidley & Austin, 394 F.Supp. 986, 992 (D.D.C.1975); aff'd. sub. nom. Day v. Avery, 548 F.2d 1018 (D.C.Cir.1976). In Nelson v. Warnke, 122 Ill.App.3d 381, 383, 461 N.E.2d 523, 524, 77 Ill.Dec. 900, 901 (1st Dist.1984), plaintiff, a limited partner, claimed that the general partner winding up the partnership owed plaintiff a fiduciary duty to invest funds held for distribution to the limited partners. The court said,
 
 
 20
 Defendant concedes that as a general rule a fiduciary relationship exists between partners, [citations omitted]. Plaintiff's contention, that defendant is liable for allowing funds to remain in a non-interest bearing account, is premised upon this general rule. However, we find controlling the fact that the partnership agreement specifically permits the general partner to invest partnership funds in non-interest bearing investments. The right of partners to establish, by means of an agreement, the duties and obligations owed one another has long been respected by this court, [citations omitted]. Where there is a partnership agreement, the court must construe it as any other contract to determine the duties of the parties.
 
 
 21
 Because the partnership agreement in Nelson permitted the general partner to make non-interest bearing investments, dismissal of plaintiff's complaint was affirmed.
 
 
 22
 Roan argues that Nelson should be distinguished because there the agreement specifically permitted non-interest bearing investments while here there were no such unambiguous terms "specifically permitting inequitable and arbitrary decisions concerning the compensation of partners." Pl.Br. at 4. The partnership agreement here is specific as to the procedures to be followed and who is authorized to make final decisions in determining compensation. But the agreement is silent as to the outcome. The agreement could have provided for a formula which eliminated discretion from the process, e.g., that each partner's compensation would be a fixed percentage of that partner's billings or based on weighted values for billable hours, billings and any other quantifiable factors. The agreement did not do this. Instead, KMC's partners, including Roan, left the decisions to the discretion of the management committee, failing a contrary concensus of the capital partners. To say, as Roan does, that the agreement did not expressly permit inequitable and arbitrary decisions, begs the question, which is whether having agreed to the decision-making process set out in the agreement Roan can now claim that those decisions are subject to judicial review under some unspecified standard of fairness. We think that the agreement is controlling and that it precludes the application of fiduciary standards to compensation decisions made in accordance with the agreement.
 
 
 23
 The controlling effect of provisions in a partnership agreement is also illustrated in Murphy v. Gutfreund, 583 F.Supp. 957 (S.D.N.Y.1984), where a former partner alleged a breach of fiduciary duty consisting of self-dealing by other partners who received very large (ranging from $16 to $32 million dollars) profits at the time the partnership was dissolved. The court said,
 
 
 24
 While these sums are unquestionably staggering, Murphy has not alleged that defendants acted outside the terms of any of the agreements governing the winding up of Salomon Bros. or the operation of the SBHC Limited Partnership, and he is therefore precluded from alleging a breach of fiduciary duty with respect to the dissolution. Id. at 971.
 
 
 25
 Roan says this ruling in Murphy does not apply because he has alleged in his breach of contract claims that KMC acted "outside the terms" of the partnership agreement. This amounts to saying that his fiduciary breach claim stands or falls with his breach of contract claims. Since we conclude later that those claims are also insufficient, it is unnecessary to consider the apparent anomaly of a fiduciary breach claim which is legally sufficient only if coupled with a breach of contract claim.
 
 
 26
 Roan argues that self-dealing is involved, a concept which makes no sense in this situation. As Roan points out, dividing partnership profits is a zero sum game. What is taken from one partner is given to the other partners. Thus, members of the management committee and, indeed all of the other partners could be personally benefited by their determination of Roan's compensation. To the extent that this involves a "conflict of interest" it is a conflict that inheres in the mechanism established in the partnership agreement. It is difficult to imagine anything more antithetical to the agreement here than the rule Roan espouses under which the partners who benefited "from the fiduciary relationship have the burden of showing by clear and convincing evidence the fairness of their actions regarding [Roan's] compensation." Pl.Br. at 10.
 
 Count II--Breach of Contract
 
 27
 In Count II Roan charges that KMC and its partners breached the partnership agreement because Roan's compensation for the period 1985 to 1988 was set without regard to the guidelines provided in Par. 6(b) of the partnership agreement. Under those guidelines the compensation committee in making recommendations on compensation to the management committee is to take into account "among other factors" the quality of each lawyers work, initiative and responsibility in handling firm clients, industry and application, judgment and experience, new business attracted and its profitability, client development and other significant contributions to the firm. Roan does not allege that the procedures specified in the partnership agreement were not followed.
 
 
 28
 This claim fails for two reasons. First, the guidelines Roan relies on apply only to the compensation committee. There is no reference to the guidelines in Par. 5(c) of the partnership agreement which authorizes the management committee to make such changes in the recommendations of the compensation committee as it deems proper or in the provision that recommendations of the management committee are final absent a different consensus of the capital partners.
 
 
 29
 Second, the guidelines are too indefinite to create any enforceable contract rights. See Ellis v. El Paso Natural Gas Co., 754 F.2d 884, 886 (10th Cir.1985). While some of the factors listed in the guidelines such as new business, profitability and industry (billable hours) lend themselves to quantification, a judgment weighing all the factors together is obviously imponderable. Roan fails to explain how those guidelines could be used as a yardstick against which to measure the fairness of any given determination. At bottom Roan's claim seems to be that KMC did not give sufficient weight in his case to billings, but the guidelines themselves say that is only one of six factors to be taken into account.
 
 
 30
 Count III--Breach of Contract--Duty of Good Faith and Fair Dealing
 
 
 31
 Count III is a claim that KMC and its partners breached implied provisions of good faith and fair dealing in the partnership agreement. Roan and KMC debate whether the Illinois cases have recognized the covenant of fair dealing and good faith implied in every contract as a basis for an independent breach of contract claim. Compare Gordon v. Matthew Bender & Co., Inc., 562 F.Supp. 1286, 1289-90 (N.D.Ill.1983), (Hart, J.) (no independent cause of action in the context of an employment at will) with Harrison v. Sears, Roebuck & Co., 189 Ill.App.3d 980, 991-92, 546 N.E.2d 248, 255-56, 137 Ill.Dec. 494, 501-02 (4th Dist.1989), (same conclusion but recognizing contrary dicta in the First District). This question need not be pursued because Roan's claim in Count III fails for a different reason.
 
 
 32
 Because the implied covenant of good faith and fair dealing is believed to further the agreement of the parties, no obligation of that type should be implied which is inconsistent with the terms of the contract. Harrison, 199 Ill.App.3d at 993, 546 N.E.2d at 256, 137 Ill.Dec. at 502. Contract terms implied in law cannot supplant express contract terms. Foster Enterprises v. Germania Federal Savings & Loan Assn., 97 Ill.App.3d 22, 31, 421 N.E.2d 1375, 1382, 52 Ill.Dec. 303, 310 (3d Dist.1981).
 
 
 33
 Roan cites the statement in Foster Enterprises that "good faith between contracting parties requires that a party vested with contractual discretion must exercise his discretion reasonably and may not do so arbitrarily or capriciously." Id. 97 Ill.App.3d at 30, 421 N.E.2d at 1381, 52 Ill.Dec. at 309. That case found that a lender's discretion in deciding whether an appraisal was acceptable was subject to an implied obligation not to unreasonably withhold approval; arbitrary rejection of the appraisal would have deprived the other contracting party of an important contractual benefit, an option to purchase the property involved. Foster Enterprises went on to observe that "bad faith is not synonymous with erroneous judgment. There can be no relief from an erroneous judgment exercised in good faith pursuant to a valid discretionary power." Id.
 
 
 34
 Under Dayan v. McDonald's Corp., 125 Ill.App.3d 972, 991, 466 N.E.2d 958, 972, 81 Ill.Dec. 143, 170 (1st Dist.1984), "a party vested with contractual discretion ... may not do so arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." The complaint presents no facts from which it could be inferred that KMC did so. The partnership agreement gave the Compensation Committee wide discretion in recommending compensation and weighing the factors upon which compensation would be based. Final determinations were to be made by the Management Committee, which was given unlimited discretion. The extreme breadth of this discretion imposes a similar breadth upon "the reasonable expectations of the parties" and concomitantly reduces the scope of judicial review in this regard virtually to zero. Heavily emphasizing billable hours as opposed to billings is consistent with the agreement and not arbitrary, and the complaint alleges no facts from which the court could find arbitrariness with respect to Roan's individual compensation.
 
 
 35
 The covenant of fair dealing requires only that one party not unfairly deprive the other of what he has bargained for; it is not a guarantee that both parties will find the outcome fair. Roan agreed to a compensation system that granted broad discretion to partners who might well disagree with him. What is fair from Roan's viewpoint, weighing billings more strongly than other factors in determining compensation, is obviously in tension with fairness as viewed by other partners whose contributions emphasize billable hours, client retention efforts and the quality of their work. The partners evidently recognized that such conflicts were inescapable and chose the procedure specified in the partnership agreement as their method for resolving them. We think that the method they chose necessarily implies an understanding that determinations made in accordance with the agreement would not be subject to legal challenge under some unspecified standard of fairness. We conclude that the implied obligation alleged in Count III is inconsistent with the process established by the partnership agreement and the reasonable expectations of the parties. We agree with KMC that Roan received what he bargained for. He has failed to state a claim for violation of the implied covenant of good faith and fair dealing.
 
 Conclusion
 
 36
 For the reasons discussed, it is recommended that Defendant's Motion to Dismiss be granted.
 
 
 37
 Under 28 U.S.C. § 636(b)(1) the parties have 10 days from the date of service hereof to file written objections to this Report and Recommendation with Judge Lindberg. Failure to file such objections will normally waive the right to appeal the rulings set forth in this Report. Egert v. Connecticut General Life Ins. Co., 900 F.2d 1032, 1039 (7th Cir.1990).
 
 
 38
 Date: May 13, 1991.
 
 
 
 *
 The Honorable Bruce M. Van Sickle, Senior District Judge of the District of North Dakota, is sitting by designation